THE FRANKLIN LIFE INSURANCE COMPANY, an Illinois Corporation doing business in this State, v. VIRGINIA Y. THARPE, a widow.

178 So. 300.

Division B.

Opinion Filed January 7, 1938.

Rehearing Denied February 3, 1938.

548

*Francis M. Miller,* for Appellant;

*Harry Gordon, Rosenhouse & Rosenhouse* and *Waller & Pepper* and *B. A. Meginniss,* for Appellee.

CHAPMAN, J.—This cause is here for the second time. It is reported in 118 Fla. 832, 160 Sou. Rep. 199. The parties will be referred to in this opinion as they appeared in the court below as plaintiff and defendant. On May 14, 1935, Virginia Y. Tharpe, widow, filed her amended bill of complaint in the Circuit Court of Dade County, Florida, in Chancery, and alleged, among other things, the issuance of a policy of insurance by the defendant on March 21, 1923, on the life of Lester T. Tharpe for the sum of $3,-000.00 and the plaintiff was the named beneficiary; that premium thereon for the first years was paid to the defendant. The policy contained the provision, viz.: "If the insured (Lester T. Tharpe) shall become totally and permanently disabled by bodily injury or by disease * * * and shall furnish proof satisfactory to the Company of such disability, the Company agrees to waive further payment of premiums under said policy, such agreement to become operative only after endorsement of the same has been made on the policy by the Company." That during the month

of February, 1924, the insured took influenza or LaGrippe and it developed into pulmonary tuberculosis from which he died on March 26, 1926. The insured traveled from place to place in an effort to find a climate suitable to procure a recovery. It was further alleged that insured was totally and physically incapacitated from giving notice or filing proof of his disability with the Company. Plaintiff had no knowledge of the existence of the policy until November, 1930. It is asserted that the policy had not lapsed for the non-payment of premiums and was in full force on the day of his said death. The prayer of the amended bill is for an order establishing policy, relief against a forfeiture thereof, and an accounting thereon, with inclusion of attorney's fees as provided by statute.

The amended bill was attacked by motion to dismiss because the policy and claims thereunder were barred by the statute of limitations, no equity, *laches,* and for failure to furnish proof of disability prior to (defendant's) cancellation. Motions to strike parts of the bill and for better particulars and each motion was overruled and denied by the lower court.

The defendant admitted the issuance of the policy and as a defense against recovery contended, among other things, the failure to furnish proof of total and permanent disability according to the terms of the policy, and the first information as to disability was on November 26, 1930; that insured was physically able to inform or notify defendant by sufficient proof as to his physcial disability. That the cause of action did not accrue within five years before the institution of the suit and *laches* existed which would prevent a recovery, and that the second premium was not paid on the policy by the insured or any person in his behalf. Other allegations appear in the answer not material to recite.

The cause was by order of the court referred to Honorable Thomas J. Dowdell with instructions to take all the evidence offered by the parties and to report his findings on questions of law and fact to the court with proper dispatch.

The parties appeared and all the testimony was taken and his report contained a recommendation to the effect that the equities of the cause were with the plaintiff and that she should recover the sum of $3,000.00, with interest, the sum of $1,250.00 as attorney's fees, and court costs in the approximate sum of $150.00. Exceptions to the report of the Special Master were promptly made and, on final hearing by the Chancellor, overruled and denied. A final decree for the plaintiff was entered and this appeal perfected, supersedeas order entered and bond given and approved, and the cause is here for review with two assignments of error for reversal.

The first assignment is the denial by the lower court of the motion to dismiss the amended bill of complaint on the grounds of (a) no equity; (b) remedy at law; (c) conclusions of pleader; (d) action did not accrue within five years prior to suit; (e) *laches;* (f) condition precedent not alleged; (g) no proof of total disability as required by the policy. It is unnecessary to consider the order denying the motion to strike portions of the amended bill or motion for bill of particulars.

The contract of insurance involved here is one controlled by the laws of Florida. An insurance policy, like other contracts should be construed or interpreted so as to give effect to the intentions of the parties to be determined by the instrument as a whole. The purpose of a policy of insurance is intended or designed to secure the indemnity stated in the policy. When terms thereof are ambiguous, they should be fairly construed so as to effectuate their purpose, design and intent. This Court has held where

there are conflicting clauses in an insurance policy, the one which affords the most protection to the insured will prevail.

The motion to dismiss the bill of complaint requires a construction or an interpretation by this Court of the clause in the policy of life insurance, viz.:

"If the insured * * * shall become totally and permanently disabled by bodily injury or disease * * * and shall furnish proof satisfactory to the Company of such disability, the Company agrees to waive further payment of premiums under said Policy, such agreement to become operative only after endorsement of the same has been made on said Policy by the Company."

The above clause, under certain conditions, agrees to waive certain premium payments when the physical condition of the insured is such that he is totally and permanently disabled * * * by disease. The bill of complaint shows that the policy of insurance issued on March 21, 1923, and the insured died March 26, 1926. It is alleged that in February, 1924, insured contracted Influenza or LaGrippe and shortly thereafter his disease was by a physician pronounced as pulmonary tuberculosis. The second annual premium on the policy of insurance matured March 21, 1924, with thirty days' grace payment permitted. It was alleged that his total permanent incapacity, caused by the disease, viz., tuberculosis, prevented insured from filing proof of disability with the company. The beneficiary had no knowledge of the existence of the policy until November, 1930.

Total and permanent disability is defined in Vol. 5 (2nd Ed.) Joyce on the Law of Insurance, par. 3031, page 5217, viz.: "3031. 'Total Disability,' 'Permanently Disabled,' 'Wholly Disabled,' etc.; Accident and Benefit Insurances.— The clauses as to 'total disability,' etc., are, with certain exceptions, so various and complicated, especially so when

considered in connection with other clauses in the same policy or contract, that it is difficult to determine whether the insurance companies have strenuously endeavored to thereby evade payment if the intricacies of language will so permit, or whether they are with the utmost good faith perhaps over-zealously, endeavoring to protect themselves and the funds with which they are entrusted. * * *

"Total disability does not mean absolute physical inability to transact any kind of business pertaining to one's occupation, but it is sufficient if his injuries are such that common care and prudence require him to desist from transacting any such business in order to effect a cure. And it follows that the preservation of life and health is such an important consideration that it may become necessary that assured desist in the pursuit of his business transactions; and if he is prevented from substantially performing every part thereof, there is a total disability. So under an Indiana case it is not necessary that assured be so wholly disabled as to be unable to perform any and every kind of business pertaining to his occupation, but it is sufficient if his disability is such that he cannot do any and all kinds of business pertaining to his occupation; and where the policy clauses are ambiguous the rule of liberal construction in favor of assured will apply."

Par. 3032, text page 5222, *supra:*

"* * * (a) *'Total and permanent disability'* to perform or *direct* any kind of labor or business means that the disability must not only be 'total,' but that it must also be 'permanent,' so far as the ability to perform or direct any kind of labor or business is concerned; and if assured becomes totally disabled both to *'perform and direct'* any and all kinds of business he is, necessarily, totally disabled either to 'perform and direct.' * * *"

"(c) *Total disability does not mean absolute inability to perform some acts or duties in the transaction of his business or in carrying on his occupation by assured.* And although the stipulation is: 'Wholly and continuously disabling said member from transacting any and every kind of business pertaining to the occupation' covered by the policy terms, the contract should receive a reasonable construction so as to effectuate the purpose intended, and inability to perform some kinds of business pertaining to insured's occupation, as in case of a merchant would not constitute total disability, assured might be able to transact certain branches of his business and still be unable to transact other branches, in which case he would not be totally disabled; the point being this, whether he was unable substantially or to some material extent to transact any kind of business pertaining to such occupation. * * *"

The allegations of the bill of complaint that the insured was not only disabled but was diseased when the premium fell due in March, 1924, and this illness about due date of premium was diagnosed as pulmonary tuberculosis and from this disease he died in March, 1926. The bill of complaint is sufficient as against this motion for dismissal.

It is urged as a ground of dismissal of the bill of complaint that the cause of action did not accrue within five years before suit. Plaintiff alleges she had no knowledge of the existence of the policy until November, 1930, and the 29th day of November, 1930, communicated with the claim department of the defendant. If the five year period began to run upon the death of the insured on March 26, 1926, and she corresponded in November, 1930, with the defendant about payment this under the circumstances may be sufficient to toll the statute. 14 Ruling Case Law, page 1333, par. 504, viz.:

"504. Excuses for Delay.—It seems to be the general

rule that where, because of circumstances and conditions surrounding the transaction, the giving of notice within the time specified becomes impossible, it will be excused and held sufficient if given within a reasonable time after the removal of the obstacle. Accordingly most courts hold that where the circumstances of the accident covered by an accident policy are such that it is impossible to comply with the provision in the policy as to the giving of notice within a certain time, the failure to give such notice does not bar a recovery. On this principle where the beneficiary is ignorant of the death of the insured, or the existence of the policy, delay in giving notice and making proofs is excused. * * *"

Likewise 37 Corpus Juris, page 968, par. 347, viz.:

"NOTICE—a. IN GENERAL. Where one not under disability has notice of an adverse claim or possession, of an actionable wrong, of the rejection of a claim presented for allowance and payment, or of a fact which by reason of the relation of the parties at once subjects the one to liability to the other, the cause of action accrues when the notice is given and the statute runs from that time, but not until then. And if one is in possession of property for and in the right of another, the right of action arises and the statute of limitations begins to run from the time of notice of an adverse holding or antagonistic claim, and not until then. So, under particular statutory provisions creating liability upon notice of the peculiar conditions, the statute of limitations runs from the time of the giving of the prescribed notice. Where a contract expressly provides for notice before liability accrues, the statute will not run until such notice is given according to the requirement of the contract."

See also: McElroy v. Hancock Mutual Life Ins. Co., 88 Md. 137, 41 Atl. Rep. 112; Federal Insurance Co. v. Holmes' Committee, 232 Ky. 834, 24 S. W. (2nd) 906; Munz v.

Standard Life & Accident Ins. Co., 26 Utah 69, 72 Pac.
Rep. 182; Metropolitan Life Ins. Co. v. People's Trust Co.,
177 Ind. 578, 98 N. E. Rep. 513; Trippe v. Provident Fund
Society, 140 N. Y. 23, 35 N. E. Rep. 316; Schanzeback
v. American Life Ins. Co., 58 S. D. 528, 237 N. W. 737;
Cady v. Fidelity & Casualty Co. of N. Y., 134 Wis. 322,
113 N. W. Rep. 967.

We find no error on the part of the court below in hold-
ing that the suit was properly brought within the five year
period.

It is contended that it was the duty of the insured under
the terms of the policy to pay the premium due on March
21, 1924, or to furnish to the defendant proof of his total
and permanent disability by bodily injury or disease.
Plaintiff replies that at the time of the due date of the
premium the circumstances and conditions then surrounding
the insured were such that strict compliance with the terms
of the policy was not only impossible but it was unreason-
able because the insured was being treated for pulmonary
tuberculosis and the knowledge of the fact of having the
disease had affected his mind to such an extent that he took
but little or no interest in any business affairs, but his sole
efforts were directed to obtaining a recovery. He was de-
spondent and melancholy. The authorities make pro-
visions for such a situation. 33 Corpus Juris, page 15, par.
663:

"EXCUSE FOR DEFAULT IN GIVING. A default in serving
notice or proofs of loss as required by the policy may be ex-
cused, where the circumstances are such as to render strict
compliance with the requirement impossible or unreason-
able, and insured has not failed to use due diligence. Thus,
a default may be excused by the physical or mental inca-
pacity of insured or the claimant under the policy, although
there is authority to the contrary.

In the case of Minnesota Mutual Life Ins. Co. v. Marshall, 29 Fed. (2nd) 977, text page 979, it was said:

"A construction making the disability benefits to begin as of the time of proof might be all right where such benefits are sought while the insured is living, but a disability provision such as the one to be construed here, where the disability occurs near the due date of the premium and continues until death, is made worthless by holding the proof of disability and not the disability itself makes it operative. Such a construction is harsh and unreasonable and ought not to be adopted if the language used is susceptible of one more favorable to the insured. * * *"

In the case of Halblutzel v. Home Life Ins. Co. of New York, 59 S. W. (2nd) text page 641, 332 Mo. 920, the Court, in construing the provisions of a policy similar to the one under consideration here, said:

"* * * 'Does this provision mean that the company will waive premiums becoming due after the insured has furnished proof or after he has become disabled? We construe it to mean that the company will waive premiums becoming due after the insured has become disabled, because this construction is more favorable to the insured, and more in consonance with the purpose of the provision, which is to give protection to the insured against disability. If it was the intention to waive only the premiums becoming due after the furnishing of proof, it would have been an easy matter for the company, who wrote the policy, to have said so in plain words.' "

See: Ryne v. Jefferson Standard Life Ins. Co., 196 N. C. 717, 147 S. E. Rep. 6; Aetna Life Ins. Co. v. Davis, 187 Ark. 398; 60 S. W. Rep. (2nd) 912; Southern Life Ins. Co. v. Hazard, 148 Ky. 465, 146 S. W. Rep. 1107; Storwick v. Reliance Life Ins. Co., 151 Wash. 153, 275 Pac. Rep. 550.

We hold that the bill of complaint is sufficient to withstand the attacks made in the motion to dismiss by the defendant.

We now pass to the question of the sufficiency of the evidence to sutain the decree sought to be reversed.

The plaintiff gave testimony, as well as her mother, the Doctor treating the deceased while in Miami, and some of his associates in business with the deceased, with citizens and residents of Macon and Bibb County, Georgia, and in the State of North Carolina and others in the State of Colorado where the deceased went shortly prior to his death. Due consideration has been given to the evidence offered on the part of the defendant and it has not been made to appear that the lower court erred in finding the equities of the cause with the plaintiff. We think the amount allowed by the lower court in way of attorney's fees excessive. We think the sum of $750.00 a sufficient amount to be allowed plaintiff in way of attorney's fees.

In the case of Farrington v. Harrison, 95 Fla., text page 770, 116 Sou. Rep. 763, this Court said:

"We also bear in mind the oft reiterated rule that while the findings of the chancellor on the facts where the evidence is heard by him, and the witnesses are before him, are entitled to more weight in the Appellate Court than where such findings are made in a cause where the testimony was not taken before the chancellor, yet in either case the chancellor's findings should not be disturbed by an Appellate Court unless shown to be clearly erroneous. Sandlin v. Hunter Co., 70 Fla. 514, 70 South. Rep. 553; Travis v. Travis, 81 Fla. 309, 87 South. Rep. 762; Lucas v. Wade, 43 Fla. 419, 31 South. Rep. 23.

"On the other hand, where a decree is manifestly against the weight of the evidence or contrary to and unsupported

by the legal effect of the evidence, then it becomes the duty of the Appellate Court to reverse such decree. Carr v. Leslie, 73 Fla. 233, 74 South. Rep. 207; Florida National Bank v. Sherouse, 80 Fla. 405, 86 South. Rep. 279; Gill v. Chappelle, 71 Fla. 479, 71 South. Rep. 836; Lightsey v. Washington Park Properties, 112 South. Rep. 555."

The decree appealed from is affirmed, except as to attorney's fees. If counsel for plaintiff files a remittitur in the sum of $500.00 upon going down of the mandate, the cause will stand affirmed, otherwise the decree appealed from is reversed.

WHITFIELD, P. J., and BROWN, J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.

BROWN, J., (concurring).—The main question involved in this case has given this writer very great concern. It is indeed a close and difficult question.

In the report of the Special Master, which was in all respects confirmed by the Chancellor, it is said:

"Where a policy of life insurance contains a Disability Benefit clause which provides that 'if the insured * * * after the issuance of the policy and the payment of at least one full annual premium thereon and before a default in the payment of any subsequent payment shall become totally and permanently disabled by bodily injury or by disease so that he is and will continue to be for life totally and permanently prevented thereby from the performance of any work or the transaction of any business for compensation or profit, and shall furnish proof satisfactory to the company of such disability, the company agrees to waive further payment of premiums under said policy, such agreement to become operative only after endorsement of the same has been made on said policy by the Company, is the

receipt by the insurer of such proof of such total and permanent disability a condition precedent to the insurer's liability under the disability clause, or is the waiver self-operating in effect, so that the total and permanent disability of the insured, without more, will operate to keep the policy in force indefinitely, precluding the insurer from defeating a recovery thereon on the ground of non-payment of premiums? (For the reasons noted below the Master is of the opinion that the giving of such notice is not a condition precedent to insurer's liability.)

"As yet, as revealed by a rather exhaustive review of numerous authorities, it appears that our Supreme Court has not been called upon to settle this question. Other State Courts of last resort have answered it, pro and con, time and time again, and a like conflict of opinion prevails in Federal decisions, as is illustrated in the case of Peoria Life Insurance Company v. Bergholm, 50 F. (2d), where the Circuit Court of Appeals for the Fifth Circuit, in reversing a judgment for plaintiff rendered in the U. S. District Court for the Northern District of Texas, in discussing the requirement of proof as a condition precedent, speaking through Walker, Circuit Judge, had this to say:

" 'Without a compliance with the prescribed requirements, the appellant would be deprived of a stipulated-for opportunity of being informed whether an authorized excuse for a failure to pay premiums within the time allowed did or did not exist before that time expired, and of determining, within a reasonable time after the receipt by it in accordance with that provision of proof that the insured is totally and permanently disabled, whether that proof is or is not satisfactory.'

"Upon certiorari granted because of a supposed conflict with the case of Minnesota Mutual Life Insurance Company v. Marshall (29 F. [2d] 977) the Supreme Court of

the United States reviewed the Bergholm case, and in an opinion delivered by Mr. Justice SUTHERLAND in effect affirmed the decision in the Marshall case in the following language:

" 'The petitioners, nevertheless, contend that this is enough to bring into effect the promise of the company to pay the premiums which became due after the disability began.' In support of this contention, Minnesota Mut. L. Ins. Co. v. Marshall, *supra,* is cited. The pertinent provisions of the policy there, however, differ from those found in the policy here under consideration. There the policy provided that if the insured, while the policy is in force and before default in payment of premiums, 'shall become totally and permanently disabled * * * and shall furnish satisfactory proof thereof, the Company will waive the payment of premiums thereafter becoming due.' The Court held that the waiver took effect at the time of the disability, and did not depend upon the time when proof thereof was furnished.

"We do not need to controvert this construction of the words quoted, or question the soundness of the view of the Court that the existence of the disability before the premium became in arrears, standing alone, was enough to create the waiver. In that view, the obligation to furnish proof was no part of the condition precedent to the waiver; but such proof might be furnished *within a reasonable time thereafter.* Here the obligation of the company does not rest upon the existence of the disability; but it is the receipt by the company of *proof* of the disability which is definitely made a condition precedent to an assumption by it of payment of the premiums *becoming due after the receipt of such proof.* The provision to that effect is wholly free from the ambiguity which the Court thought existed in the Marshall policy. Compare Brams v. New York L. Ins. Co.,

299 Pa. 11, 12, 148 Atl. 855. It is true that where the terms of a policy are of doubtful meaning, that construction most favorable to the insured will be adopted. Mutual L. Ins. Co. v. Hurni Packing Co., 263 U. S. 167, 174, 68 L. Ed. 235, 238, 31 A. L. R. 102, 44 S. Ct. 90; Stipcich v. Metropolitan L. Ins. Co., 277 U. S. 311, 322, 72 L. Ed. 895, 900, 48 S. Ct. 512. This canon of construction is both reasonable and just, since the words of the policy are chosen by the insurance company; but it furnishes no warrant for avoiding hard consequences by importing into a contract an ambiguity which otherwise would not exist, or, under the guise of construction, by forcing from plain words unusual and unnatural meanings."

(See Bergholm v. Peoria Life Insurance Company, 284 U. S. 489; 76 L. Ed. 416.)

"In the Marshall case, *supra*, the Disability Benefit clause was strikingly similar in wording, and a great many of the material facts were likewise similar to the proven facts in this cause.

"As was stated in the Marshall case: 'It is a familiar rule of construction that where contracts of insurance are prepared by the Insurer and there is doubt as to the meanings of their provisions, it will be construed most favorably to the insured'; and, quoting again: 'Forfeitures are not favored'; the rule is that if policies of insurance contain inconsistent provisions or are so framed as to be fairly open to construction, that view should be adopted, if possible, which will sustain rather than forfeit the contract. * * * However much the legal mind may differ as to the meaning of these provisions, the ordinary layman would construe them to mean that, in the event he became disabled before his premium fell due, his insurance would be continued until his disability was removed or until his death. The right of the insured to have his premium discontinued

during disability is one that he has paid for. To make its operation depend upon the time of proof of disability, and not upon the time of disability itself * * * rendered the provision of the policy under consideration inoperative and the right of no value. A construction making the disability benefits to begin as of the time of proof might be all right, where such benefits are sought while the insured is living, but a disability provision such as the one to be construed here, where the disability occurs near the due date of the premium and continues until death, is made worthless by holding the proof of disability and not the disability itself makes it operative. Such a construction is harsh and unreasonable and ought not to be adopted if the language used is susceptible of one more favorable to the insured.' "

"As before intimated, the law as quoted from the foregoing opinion has been upheld by Supreme Court decisions in Arkansas, Nebraska, North Carolina, South Carolina, Virginia, Kentucky, Missouri, Tennessee, Texas and Washington. On the other hand, many State Courts of last resort have denied relief under similar circumstances. The Master being of the opinion that the law as laid down in the Marshall case, *supra,* should be applicable to the facts and circumstances surrounding this case, therefore further finds that the equities in this cause are with the plaintiff; * * * "

Since this report was filed in the court below and decree was rendered in this case there has appeared in the Federal reports a very strong opinion by Judge Louis W. Strum rendered while acting as one of the Judges of the United States District Court of Appeals, Fifth Circuit, which dealt with a policy of Life Insurance issued by this same company, the Franklin Life Insurance Company, embracing a disability benefit rider identical to the disability benefit rider involved in this case. The case referred to is Chambers

v. Franklin Life Insurance Company, 80 Fed. (2d) 339. This is a very strong opinion and reaches a different conclusion from that reached by the Special Master and the Chancellor in the case at bar. The facts of the two cases are quite similar except in one vital respect, which distinguishes that case in that regard from the case now before us. As in this case, so in the Chambers case, the suit was brought by the wife of the deceased husband to recover upon a policy in which she was named as the beneficiary. It was a Texas case and was instituted by a petition filed by Mrs. Chambers, to which demurrers were sustained, and she appealed, with the result that the order of the trial court sustaining the demurrers was affirmed. In the course of the opinion Judge Strum observed that:

"Petitioner does not allege that she was unaware of the existence of the policy."

In the instant case the plaintiff wife was unaware of the existence of the policy until shortly before her claim was brought to the attention of the company, and was therefore excusable from herself furnishing proof of total and permanent disability of her husband up to the time that she discovered the existence of the policy. After such discovery she acted promptly. It appears also that her discovery of the existence of the policy was accidental and that before such discovery she had neither knowledge nor notice of any sort, nor anything to put her upon inquiry, as to its existence.

In the opinion of Mr. Justice Strum it is said:

"The gist of this disability clause is that if the insured becomes totally and permanently disabled, and shall furnish satisfactory proof thereof to the company, the company will waive further premiums. Any ambiguity existent at that point as to whether proof of disability is a condition precedent to the waiver of premiums is dispelled by the quoted

phrase which follows immediately, and in the same sentence, that the agreement to waive further premiums becomes operative, only after indorsement of the same on the policy by the company. That phrase definitely fixes the time when the agreement to waive further premiums becomes 'operative.' It would be incongruous and unnatural to hold that the parties intended that the company would indorse on the policy an agreement to waive further premiums, and that such agreement should become operative, before proof of such disability, which is the basis of such indorsement, is submitted. Without the last clause, there might be room for doubt, which would be resolved against the company; but giving the language and structure of the whole disability clause a natural and unstrained meaning, no room for doubt remains. No question is here presented as to the consequences of an arbitrary or wrongful refusal of the company to indorse the policy after due proof furnished. We hold the effect of the clause in question to be that the furnishing of proof of disability is a condition precedent to the waiver of premiums, and that a failure to comply therewith necessarily defeats a recovery, unless performance is waived or excused. Bergholm v. Peoria Life Ins. Co., 284 U. S. 489, 52 S. Ct. 230, 76 L. Ed. 416; Orr v. Mutual Life Ins. Co. (C. C. A.) 64 F. (2d) 561; Avery v. New York Life Ins. Co. (C. C. A.) 67 F. (2d) 442.

"Whether or not insured's alleged inability to furnish proof, by reason of his mental and physical condition, relieves him from the ordinary consequences of failure to perform a condition precedent, is a question upon which there is an array of divergent authority.

"See Mutual Life Ins. Co. v. Johnson, 293 U. S. 335, 55 S. Ct. 154, 79 L. Ed. 398; Pfeiffer v. Missouri State Life Ins. Co., 174 Ark. 783, 297 S. W. 847, 54 A. L. R. 600,

and note. Again, we are without a controlling Texas decision."

After reviewing the facts in the Chambers case Judge Strum, speaking for the Circuit Court of Appeals, reached the conclusion that:

"In these circumstances it cannot be said that insured's alleged condition rendered impossible the furnishing of proof, at least by others in interest who now claim the benefit of the policy, if insured was unable to personally do so."

In the instant case, the only other person in interest, besides the insured, was the wife, appellee here, whose failure to furnish proof should in my opinion be excused, because, as above stated, it was clearly shown that she was totally unaware of the existence of the policy until its accidental discovery several years after her husband's death, whereupon she promptly took the matter up with the company and in due time after the company's denial of liability, attempted by suit to establish her rights thereto.

Now as to the insured himself, the question, which it seems to me is the main question of fact in the case, was whether the evidence showed that the mental and physical condition of the insured was such as would excuse performance by him with regard to furnishing to the company proof of his total disability. This question was determined by the court below in favor of the plaintiff, appellee here, and under our well established rule this determination should not be set aside on appeal unless it was clearly erroneous. We cannot say that this conclusion of the chancellor from the evidence was clearly erroneous.

Prior to the expiration of the grace period within which the second annual premium should have been paid, and in the early part of February, 1924, the insured, a young man of twenty-five, with a wife and young son to support, con-

tracted a severe cold which incapacitated him from performing his duties as an automobile salesman and after several weeks, during which he was confined to his bed, a physician was called in, who, after making X-ray and other examinations, advised his wife that the insured had "galloping consumption" and advised that he be taken to a higher climate. The doctor found that he had pulmonary tuberculosis in both lobes of the lungs. The insured took this diagnosis very seriously and feared that he was a doomed man, and from there on until the date of his death he waged a losing battle to regain his health, being taken from one health resort to another in Georgia, Colorado, and North Carolina, his physical and mental condition in the meantime progressively growing worse. He died in Asheville, North Carolina, in March of 1926, about two years after he first became ill. Throughout this period he had severe hemorrhages and night sweats, and became very melancholy, and believed he was going to die. He made no will, nor was he able to attend to any other private business. He also developed tuberculosis of the throat in Colorado and when he went to Hillcroft Sanitarium in North Carolina he had lost his voice completely. Indeed, it appears that the insured was a desperately ill man from the first and though normally of a cheerful disposition, he became very despondent and melancholy, rapidly lost weight and was reduced to a mere skeleton when he died. After her husband became ill his wife went to work for the Western Union Company in Miami in order to support herself and their minor child. The two insurance policies, one in favor of the wife and the other in favor of the child, were the only insurance Tharpe left. The insured never told his wife about the insurance and the subject was never discussed during his illness. As was stated in the Marshall case, *supra,* the ordinary layman would be very apt to con-

strue such a provision in the policy, as the one here involved, to mean that, in the event he became disabled before his premium fell due, his insurance would be continued until his disability was removed or until his death. His right to have the premiums discontinued during disability was one that he had contracted for and paid for. To make this right depend upon the time of proof of disability and not upon the time of the disability itself, under circumstances such as are shown by this record, would render the provision of the policy above referred to inoperative in this and in similar cases, and the right of no value. The record in this case does not show that the Insurance Company ever called the attention of the insured to the fact that he was delinquent in the payment of premiums, or that the company considered the policy canceled by reason of such non-payment. I think, therefore, that this case falls within the reasoning in the case of Minnesota Mutual Life Insurance Co. v. Marshall, 29 Fed. (2d) 977, which doctrine was recognized as applicable in a certain class of cases by the Supreme Court of the United States in Bergholm v. Peoria Life Insurance Company, *supra,* both of which cases are cited in the Master's report in this case. As persuasive authority, see also Gulf Life Ins. C. v. Stossel, decided June 30, 1937, and reported in 175 So. 804.

For these reasons, as well as for those advanced by Mr. Justice CHAPMAN in his opinion, I think that this Court would not·be justified in disturbing the conclusion reached by the chancellor on either the facts or the law of this case. Therefore, in my opinion, the decree of the court below should be affirmed.