CASE No. 1 (Circuit Court case number 1067).

SARAH R. HALLOWES and WILLIAM A. HALLOWES, III, as Executrix and Executor of the Estate of William A. Hallowes, Jr., v. NEW YORK LIFE INSURANCE COMPANY, a corporation.

CASE No. 2 (Circuit Court Case number 1068).

SARAH R. HALLOWES and WILLIAM A. HALLOWES, III, as Executrix and Executor of the Estate of William A. Hallowes, Jr., v. NEW YORK LIFE INSURANCE COMPANY, a corporation.

184 So. 7, 12, 14
Opinion Filed July 14, 1938.
Opinion on Rehearing Filed October 5, 1938.
Rehearing Denied November 7, 1938.

874

*Cockrell & Cockrell,* for Petitioners;

*Doggett, McCollum, Howell & Doggett,* for Respondent.

BROWN, J.—In the two above entitled cases, writs of certiorari were granted by this Court to review the judgments of the Circuit Court for Duval County reversing two judgments which had been rendered by the Civil Court of Record of Duval County in favor of Mrs. Sarah R. Hallowes, as administratrix, and William A. Hallowes, III, as Executor, of the estate of William A. Hallowes, Jr., against the New York Life Insurance Company. If each of the judgments of reversal contain such affirmative directions to the court below to proceed in violation of certain essential requirements of the law in the ultimate judgments required to be rendered, this would bring these cases within the exception to the general rule, which is that a judgment or reversal and remand for another trial is not such a final judgment as will authorize review by certiorari. Midland Motor Car Co. v. Willys-Overland, Inc., 101 Fla. 837, 132 So. 692; Grodin v. Railway Express Agency, 116 Fla. 378, 156 So. 476. It was upon the theory that, if petitioner's contention as to the law governing these cases was correct, the judgments of reversal rendered therein by the Circuit Court would then fall within the exception recognized by the above cited cases and thus authorize review by certiorari—it was upon this theory that these writs were issued, the final disposition of which depends upon whether the Circuit Court, in its reversal and directions to the trial court departed from the essential requirements of the law as applied to the facts of these cases.

These two cases are separate actions at law originally tried in the Civil Court of Record, Duval County, wherein

appellants, as Executors of the Estate of William A. Hallowes, Jr., sought to recover against appellee, New York Life Insurance Company, disability benefits under provisions contained in two separate life insurance policies issued by said Company in the year 1920 upon the life of William A. Hallowes, Jr., such benefits being claimed for a period of time extending from April 5, 1933, to the death of insured on August 21, 1933. The cases being essentially similar, were here argued and submitted together.

These cases do not involve any contest as to the life insurance *per se,* which presumably was paid upon proof of death of the insured, but the contest, in each case, pertains only to the question of the Company's liability for disability benefits.

The policy dated December 28, 1920, on the first page thereof, provided that:

"The Company agrees to pay to the insured one per cent. of the face of this policy each month during the endowment period, if the insured becomes wholly and permanently disabled before age 60, subject to all of the terms and conditions of Section 1 hereof."

The pertinent provisions of Section 1 are as follows:

"Section 1. Disability Benefits. 1. Disability benefits shall be effective upon receipt of due proof, before default in the payment of premiums, that the Insured became totally and permanently disabled after he received this policy and before its anniversary on which the insured's age at nearest birthday is 60 years."

"Disability shall be deemed to be total whenever the Insured becomes wholly disabled by bodily injury or disease so that he is prevented thereby from engaging in any occupation, * * * and under this contract disability shall be presumed to be permanent after the Insured has been continuously so disabled for not less than three months."

"2. Income Payments. On the 1st day of the calendar month following receipt of such proof, if such disability has continued until that day, the company will pay the Insured a sum equal to one per cent. of the face of the policy and a like sum on the 1st day of each calendar month thereafter during the continuance of such disability within the endowment period."

The other policy, dated February 1st, 1920, contained the following:

"And the Company agrees to pay to the Insured one-tenth of the face of this policy per annum during the lifetime of the Insured, if the Insured becomes wholly and permanently disabled before age 60, subject to all the terms and conditions contained in Section 1 hereof."

The pertinent provisions of Section 1 of this policy are as follows:

"Section 1. Total and Permanent Disability Benefits. Whenever the company receives due proof, * * * that the Insured, * * * has become wholly disabled by bodily injury or disease so that he is and will be presumably, thereby permanently and continuously prevented from engaging in any occupation, * * * and that such disability has then existed for not less than sixty days * * * then * * *

"2. Life Income to Insured. One year after the anniversary of the Policy, next succeeeding the receipt of such proof, the company will pay the Insured a sum equal to one-tenth of the face of the policy and a like sum on each anniversary thereafter during the lifetime and continued disability of the insured. * * *"

Both the policies contain the following express provision:

"No agent is authorized to waive forfeitures, or to make, modify or discharge contracts, or to extend the time for paying premiums."

In each case, it is provided that the policy and the application attached constitute the entire contract. The policies and the provisions relied upon are substantially the same, differing only in detail as pointed out.

The period of disability extended from April 5, 1933, to the death of the insured, August 21, 1933, a period of time which had wholly expired before any formal proofs of disability were furnished the insurance company itself, although the local agent had been acquainted with Mr. Hallowes' condition and had agreed to prepare the proofs as soon as he could get the affidavits from the attending physicians, but before this could be done Mr. Hallowes died. The only evidence of the furnishing of proofs of disability to the company itself under either of the policies are the proofs furnished by the Executors after the death of the insured.

It will be noted that the policy does not expressly provide how proof of disability shall be made. Nor does the first policy above referred to expressly provide to whom the proof shall be made. The second policy implies that the proof shall be made to the company itself by saying: "Whenever the company receives due proof," etc.

The evidence submitted upon the trial of these cases in the Civil Court of Record shows that the insured, Mr. William A. Hallowes, Jr., was stricken with what proved to be a fatal disease on April 5, 1933, and was totally and permanently disabled within the meaning of the policy from that time until his death on August 21st following. Early in the morning of April 5th he became suddenly very weak and fell to the floor. Dr. Stanley Erwin, who lived near by, was immediately summoned and decided that he had suffered an internal hemorrhage. An ambulance was summoned and he was taken immediately to the nearest hospital, in a very serious condition. Dr. Robert McIver

was called and found that the hemorrhage had subsided and that an immediate operation was not necessary. He was given a blood transfusion and a few days later operated upon to remove an ulcer of the duodenum, the breaking of which had caused the hemorrhage. His condition following the first operation proved very serious and such conditions developed that a second operation became necessary on May 8th. While he gained some strength after this operation his stomach did not function and other organs gave trouble. He was nourished through intravenous injections. On May 24th Mr. Hallowes was taken by Dr. McIver, who was accompanied by Mrs. Hallowes and a trained nurse, to a famous specialist in Philadelphia. After two weeks under his treatment he gained sufficient strength to return home about the 15th of June. He continued to show some improvement in strength and early in July he became able to go automobile riding with his wife and to visit Dr. Erwin at his office, thence going to his law office, which was near at hand, for a few minutes, but not undertaking any work whatever. His son, William A. Hallowes, III, looked after the continuance of all his father's cases in court, except one which was set for July 14. On that morning Mr. Hallowes insisted on going to the court and having the case continued himself. However, on July 27th, his condition became serious again and he was confined to his bed, very drowsy and in a coma most of the time. He was then taken back to the hospital, and shortly thereafter on August 13th he was taken to Philadelphia for the second time. He soon went into a complete coma and finally on August 21st he was operated on for the third time, and died that night.

These insurance policies were taken by Mr. Hallowes at the solicitation of Mr. Milton E. Bacon, his warm personal friend, and who had been representing the respondent com-

pany in Jacksonville for a great many years. All of Mr. Hallowes' dealings with reference to these policies, the payment of premiums, etc., had been with Mr. Bacon. In February of 1933 Mr. Bacon had made the arrangements at the request of Mr. Hallowes to look after the surrender of two policies in the New York Life, aggregating $25,000.00, for the cash-surrender value.

Sometime between the 15th and 20th of June, Mr. Hallowes' son went to Mr. Bacon's office, after his return from Philadelphia, and discussed with him the disability feature of his father's insurance policies. He told Bacon that they were bringing his father home and that he "hoped he was getting along all right"; at least he "thought he was." He also told Mr. Bacon how seriously ill his father had been and the condition he was in. Before leaving for Philadelphia the second time, on August 13th, young Mr. Hallowes instructed his father's secretary to see Mr. Bacon immediately Monday morning in regard to this matter of disability, but he admitted that he did not give the New York Life Insurance Company's home office any information relative to his father's illness or disability until after his death.

Miss Mabel Barnes, Mr. Hallowes' secretary, testified that she went to see Mr. Bacon as requested by Mr. Hallowes' son, about August 14th and talked it over with him, and that Mr. Bacon stated that they had better put in a claim and that he would help in regard to the matter of proofs of disability, and would get Dr. McIver to sign the necessary papers as soon as he returned. Mr. Bacon asked to see the policies, and was told that they were in Mr. Hallowes' safety box, but before they had time to complete the matter Mr. Hallowes died.

The main controversy in the court below seems to have been over the question as to whether or not notice to Milton

Bacon, and his knowledge of Mr. Hallowes' complete disability throughout this period of about five months before his death, was notice to the Company, and in and of itself constituted sufficient proof of disability during the lifetime of the insured.

It appears that there was sufficient language in these insurance policies, and in the applications therefor, which were made parts thereof by the terms of the policies, to put the insured upon inquiry as to the scope of Bacon's authority to act for the Company. The evidence shows that Mr. Bacon was in fact the soliciting agent for the Company, although it was shown that Mr. Hallowes usually paid his premiums as they fell due to, or through, Mr. Bacon. While Bacon was an agent for the Company within the meaning of the statute, we have held that Section 6307 C. G. L. is not in all cases conclusive as to the scope and extent of the authority of an agent for an insurance company. The general rule is that apparent authority of an insurance company's agent is equal to real authority as to third persons, when limitations on his authority are not made known, but where the circumstances are such as to put one dealing with such an agent upon inquiry as to the limitations upon his actual authority, notice of such limitations will be imputed to such third persons. Without going into this matter at any length, we need merely say that we adhere to the principles laid down in the case of Parsons v. Federal Realty Corporation, 105 Fla. 105, 143 So. 912, and the cases therein cited. In this case the agent, Mr. Bacon, testified that he had been soliciting insurance for the New York Life Insurance Company for many years and that he procured the issuance of these policies for Mr. Hallowes, and handled most of his premium payments for him. That with reference to the preparation of disability claims, he usually attended to all

the details, because the insured was usually not in a position to do so, nor the beneficiary; that generally the insured's family are not sufficiently informed with regard to the matter, and that they usually told him the facts and he attended to all the details; that he prepared the death claim in this case for Mrs. Hallowes and also assisted in making up the proofs of disability after Mr. Hallowes' death. He admitted that he was not an officer of the Company, and counsel for the Insurance Company endeavored to get in evidence the contract between the Company and Bacon, and the book of instructions to agents which had been delivered to him, for the purposes of showing the limitations upon Bacon's actual authority, and to show what he was without authority to accept, or bind the Company with reference to, proofs of disability. The trial court would not permit the introduction of these documents, which action the Circuit Court held to be erroneous, and doubtless correctly so; but in view we take of these cases, it is not necessary to decide that question. We have not set out in this opinion all of the provisions of the applications for these policies, but we are inclined to the view that they were sufficient to put the insured, who was an eminent lawyer of Jacksonville, upon inquiry as to the actual scope and extent of Bacon's authority.

However, the main purpose of both of these policies was to insure the life of Mr. Hallowes and also to insure him against permanent and total disability during his life. On the first page of each policy it is stated that the company agrees to pay the insured a certain amount if the insured becomes wholly and permanently disabled before the age of 60, subject to the terms and conditions contained in Section 1. In one of the policies Section 1 provided that disability benefits shall be effective upon receipt of due proof before default in the payment of premiums, and in the other it is

provided that "whenever the company receives due proof before default in the payment of premiums," etc.

Undoubtedly, the terms of the contract contemplated that such "due proof" should be furnished by the insured to the company during his lifetime.

The real question upon which this case turns is whether Mr. Hallowes, the insured, was legally excusable for not furnishing these "due proofs" of permanent disability before his death. They are furnished by his executors with reasonable promptness after his death. These provisions of the policies with reference to the furnishing of proofs of permanent disability were undoubtedly intended to prevent the company from being imposed upon. But in this case the evidence overwhelmingly shows that Mr. Hallowes was desperately ill from April 5, 1933, until his death on August 21st following. He was not physically or mentally in any condition to make these proofs. Nor was it shown that his wife (who was a beneficiary as to the life insurance only) knew anything about these policies or their provisions with reference to the furnishing of proofs, and his son acted promptly as soon as he became convinced, a week before the end came, that his father's disability was presumably permanent. But before Mr. Bacon could secure the affidavits of the physicians, and furnish the "due proofs" to the Company, Mr. Hallowes died.

The law does not require the impossible, and in this case it indubitably appears that the furnishing of these proofs of disability to the Company or its officers was not possible until after Mr. Hallowes' death. The evidence shows that his family did not entirely give up hope of his recovery until, a few days before his death, they took him to Philadelphia for the last time. Under such circumstances the failure to furnish due proofs of such disability to the Company's home office during the lifetime of the insured was

practically impossible, and, as we see it, legally excusable; and the failure to do so should not, therefore, relieve the Company of liability for the disability payments to which Mr. Hallowes was entitled under the terms of the policies. The Company was in no way prejudiced nor injured by the failure to furnish these proofs, and the failure being excusable under the circumstances, the Company is liable therefor. In so holding we follow the recent decision of this Court in the case of Franklin Life Insurance Company v. Tharpe, 130 Fla. 546, 178 So. 300, which was decided after these cases were considered by the Circuit Court.

In these cases there was and is no doubt whatever about the fact that the insured was actually permanently disabled from April 5, 1933, to the time of his death. Nor is there any question about the payment of the premiums. They were never in default. The insured had kept these policies in full force for over twelve years.

The result is that the judgments of the Circuit Court, reversing the two judgments which had been rendered in the Civil Court of Record in these cases, must be and the same are hereby quashed, and these two causes are remanded for further proceedings not inconsistent with the foregoing opinion.

It is so ordered.

ELLIS, C. J., and WHITFIELD, TERRELL, BUFORD and CHAPMAN, J. J., concur.

### ON REHEARING.

BUFORD, J.—In petition for rehearing, which was granted, it is contended:

"1. Said judgment is based upon the decisive ground, 'the failure to furnish due proof of his disability to the company's home office during the lifetime of the insured

was practically impossible, and, as we see it, legally excusable.' "

"This is a point which was not made an issue by the record. References to the following portions of the record —which are the only places this point could have arisen—will show that it was never tendered as an issue that the impossibility of timely and properly making due proof was the reason it was not made, and that neither the Civil Court of Record nor the Appellate Court ever considered it;

"The declaration did not so allege (R. p. 4);

"The demurrer to the Declaration did not raise the point. (R. p. 15);

"The Pleas did not present it (R. pp. 21, 26, 32);

"It was not mentioned in the company's Motion for a Directed verdict (R. p. 143);

"Nor did the company's Motion for New Trial suggest it (R. p. 145);

"Nor its Motion in Arrest of Judgment (R. p. 65);

"Nor its assignment of Errors on Bill of Exceptions (R. p. 146);

"Nor its Complete Assignment of Errors (R. p. 154);

"It was not referred to by the Circuit Judge (Opn. R. p. 163);

"It was not stated as a 'question involved' in the Petitioner's Brief—nor in the company's Reply Brief;

"In all those places where alone the points in dispute are disclosed, the record shows that the only controversies between the parties were (1) did the oral transactions of the insured's representatives with Bacon constitute due proof of disability? and (2) in view of those transactions, did the company waive the policy requirements of due proof? The opinion recognizes this, in stating: 'The main controversy in the Court below seems to have been over

the question as to whether or not notice to Milton Bacon, and his knowledge of Mr. Hallowes' complete disability * * *, was notice to the company, and in and of itself constituted sufficient proof of disability during the lifetime of the insured.' "

After reargument, we find that counsel for respondent has misconstrued the intent and meaning of our opinion in the phase thereof referred to.

In the original opinion we said:

"However, the main purpose of both of these policies was to insure the life of Mr. Hallowes and also to insure him against permanent and total disability during his life. On the first page of each policy it is stated that the company agrees to pay the insured a certain amount if the insured becomes wholly and permanently disabled before the age of 60, subject to the terms and conditions contained in Section 1. In one of the policies Section 1 provided that disability benefits shall be effective upon receipt of due proof before default in the payment of premiums, and in the other it is provided that 'Whenever the company receives due proof before default in the payment of premiums,' etc.

"Undoubtedly, the terms of the contract contemplated that such 'due proof' should be furnished by the insured to the company during his lifetime.

"The real question upon which this case turns is whether Mr. Hallowes, the insured, was legally excusable for not furnishing these 'due proofs' of permanent disability before his death. They were furnished by his executors with reasonable promptness after his death. These provisions of the policies with reference to the furnishing of proofs of permanent disability were undoubtedly intended to prevent the company from being imposed upon. But in this case the evidence overwhelmingly shows that Mr. Hallowes was desperately ill from April 5, 1933, until his death on Au-

gust 21st following. He was not physically or mentally in any condition to make these proofs. Nor was it shown that his wife (who was a beneficiary as to the life insurance only) knew anything about these policies or their provisions with reference to the furnishing of proofs, and his son acted promptly as soon as he became convinced, a week before the end came, that his father's disability was presumably permanent. But, before Mr. Bacon could secure the affidavits of the physicians, and furnish the 'due proofs' to the Company, Mr. Hallowes died."

By the statement, "Undoubtedly, the terms of the contract contemplated that such 'due proof' should be furnished by the insured to the company during his lifetime," we meant that it was contemplated that 'due proof' be made to the company by the insured during his lifetime but we followed that by holding that "due proof" could be made by insured's legal representatives after his death, under some conditions, and that such conditions obtained in this case.

The question decided was squarely presented in the lower court and on the record here.

The declaration alleged:

"The said William A. Hollowes, Jr., so assured became on to-wit the 5th day of April, 1933, wholly and permanently disabled before the age of 60, and so continued to be wholly and permanently disabled for a period of to-wit 139 days until the time of his death on to-wit August 21st, 1933, under such circumstances as to come within the promise and undertaking of said policy and to render liable and oblige the said William A. Hallowes, Jr., for the amount of $571.23; that after the death of said William A. Hallowes, Jr., Plaintiff Sarah R. Hallowes, was duly appointed and qualified and is now acting as executrix of the estate of said William A. Hallowes, Jr., and said William A. Hal-

lowes IN was duly appointed and qualified and is now acting as executor of the estate of said William A. Hallowes, Jr.; that all conditions have been performed and fulfilled and all things existed and happened and all periods of time elapsed to entitle the plaintiffs to the performance by the defendant of said contract, and to entitle the plaintiffs to the said sum of $571.23, and nothing has occurred to prevent the plaintiffs from maintaining this action; yet the defendant has not paid or made good to said William A. Hallowes, Jr., or to plaintiffs the said amount of loss or any part thereof, but refuses so to do."

Defendant's Ninth Plea was:

"That the Defendant has not received due proof of the insured's alleged disability."

So, the sum-total of our holding in this regard is that, under the showing made by the record the proof of disability made by the legal representatives, after the death of the insured, was sufficient to meet the requirement of "due proof" and that under the pleadings and proof the executors were entitled to recover for the full period of disability.

So that the opinion and judgment filed and entered herein on July 14th, 1938, is in all respects adhered to.

So ordered.

ELLIS, C. J., and WHITFIELD, BROWN, BUFORD and CHAPMAN, J. J., concur.

## REHEARING DENIED

PER CURIAM.—For the reasons, stated in our opinion filed this day in the companion case, our judgment entered herein on July 14th, 1938, is now, in all respects, adhered to.

So ordered.

ELLIS, C. J., and WHITFIELD, BROWN, BUFORD and CHAPMAN, J. J., concur.