**JEANNETTE H. DAVIS v. THE EQUITABLE LIIFE ASSURANCE SOCIETY OF THE UNITED STATES, a corporation.**

6 So. (2nd) 842                                    Division A
March 10, 1942

Donald C. McMullen & Sons, for plaintiff in error;

Shackleford, Farrior & Shannon, for Defendant in Error.

PER CURIAM:

This is an action by the widow, who is the beneficiary of a life and disability policy of insurance, to recover monthly benefits which it is claimed accrued to the insured deceased husband during his disability before his death, though not paid because no notice of the disability was given to the insurer until after the death of the insured.

The insurance policy dated June 16, 1923, contains the following:

"(First page)

"The Equitable Life Assurance Society of the United States

Henry Baldwin Hyde, Founder, July 26, 1859

| Number | Hereby Insures the | Face |
| --- | --- | --- |
| | Life of · | Amount |
| 3,202.300 | — James G. Davis — | $5,000 |
| ——— | (herein called the Insured) | ——— |

And Agrees to Pay at Its Home Office in the

City of New York

Five Thousand Dollars

(the face of this policy)

to

his wife          —Jeannette H. Davis—     Beneficiary

(with the right to the Insured to change the

Beneficiary or assign this policy)

upon receipt of due proof of the death of the Insured, provided premiums have been duly paid and this policy is then in force and is then surrendered properly released; and in event of death from accident the Society agrees to increase the amount so payable to—Ten Thousand Dollars—upon due proof that the death of the Insured resulted solely from bodily injuries caused directly, exclusively and independently of all other causes by external, violent and purely accidental means, subject to the terms and conditions contained on the third page hereof. And further, if the Insured becomes wholly and permanently disabled before age 60 the Society will waive subsequent premiums and pay to the Insured a disability-annuity of—Fifty Dollars—a month, subject to the terms and conditions contained on the third page hereof. This insurance is granted in consideration of the payment in advance of Two hundred twenty and 45/100 Dollars Including Do. Ind. & Dis. Premiums and of the payment Annually thereafter of One Hundred Seventy-six and 10/100

Dollars upon each Sixteenth day of June (Comm. June 16th 1924) until the death of the Insured. These payments include an annual premium of $5.00 for the Double Indemnity and of $11.55 for the Total and Permanent Disability provision granted under this contract. Upon any anniversary of this policy said Double Indemnity and Disability provisions may be discontinued by returning this policy to the Society for proper endorsement with a written request signed by the Insured (or assignee if any) and thereafter the payment of the premiums for such provisions shall not be required.

"The Privileges and Conditions stated on the subsequent pages hereof form a part of this contract as fully as if recited at length over the signatures hereto affixed. . . .

"(From third page of policy)

"Total and Permanent Disability

"(1) Disability Benefits before age 60 shall be effective upon receipt of due proof, before default in the payment of premiums, that the Insured became totally and permanently disabled by bodily injury or disease after this policy became effective and before its anniversary upon which the Insured's age at nearest birthday is 60 years, in which event the Society will grant the following benefits:

"(a) Waive Payment of All Premiums payable upon this policy falling due after the receipt of such proof and during the continuance of such total and permanent Disability; and

"(b) Pay to the Insured a Monthly Disability-Annuity as stated on the face hereof; the first payment to be payable upon receipt of due proof of such

Disability and subsequent payments monthly thereafter during the continuance of such total and permanent Disability.

"(Note:—Any Premiums so waived and any Disability-Annuity so paid shall not be deducted from any amount payable in any settlement of this policy.)

"Disability shall be deemed to be total when it is of such an extent that the Insured is prevented thereby from engaging in any occupation or performing any work for compensation of financial value, and such Total Disability shall be presumed to be Permanent when it is present and has existed continuously for not less than three months; and, further, the entire and irrecoverable loss of sight of both eyes, or the severance of both hands at or above the wrists, or of both feet at or above the ankles, or of one entire hand and one entire foot, will of themselves be considered as Total and Permanent Disability within the meaning of this provision."

The declaration alleges that:

". . . on June 16, 1923, in consideration of the payment in advance by James G. Davis of the sum of Two Hundred Twenty Dollars and Forty-five Cents and of the payment annually thereafter of One Hundred Seventy-six Dollars and Ten Cents upon each sixteenth day of June, commencing June 16, 1924, until the death of the insured, the defendant made and delivered to James G. Davis, its policy of insurance on the life of the said James G. Davis, and thereby insured the life of the said James G. Davis in the sum of Five Thousand Dollars; and in consideration of the payments made and to be made in the manner aforesaid, defendant also by said policy insured the said James G. Davis against becoming wholly and perma-

nently disabled before he should reach the age of sixty, thereby agreeing that in the event the said James G. Davis should become wholly and permanently disabled before default in the payment of premiums and before reaching the age of sixty the defendant would waive all subsequent premiums and pay to the said James G. Davis a disability-annuity of Fifty Dollars a month, such waiver of payment of premiums and the payment of disability-annuity to begin on receipt of due proof of total and permanent disability of the said James G. Davis by bodily injury or disease, and to continue during such total and permanent disability, the first payment to be made upon the receipt of such due proof of disability, and subsequent payments to be made monthly thereafter during the continuance of such disability, as will more fully appear by a copy of said policy hereto attached and marked Exhibit 'A' and made a part hereof.

"That before default in the payment of premiums and while the said James G. Davis was of the age of fifty-five years, he became wholly and permanently disabled by disease on, to-wit, October 3, 1939, and continued in such state of disability until he died on, to-wit, December 2, 1940. That proof of such disability was not given to defendant for the reason that from October 3, 1939, continuously to December 2, 1940, the disease causing the disability and death of the said James G. Davis was of such serious nature as to render it practically impossible and therefore legally excusable to strictly comply with the requirements of the said policy as to due proof of such total and permanent disability, and such proof was thereby excused. That for five or six years previously to October 3, 1939, the said James G. Davis had been suffer-

ing from an enlarged heart, and on said last mentioned date he was stricken with coronary thrombosis and was immediately obliged to take his bed; that he was thereafter practically helpless, and on, to-wit, December 2, 1939, an embolism had developed, from which he suffered intense pain in the region of his heart; that it then became necessary to administer opiates for the relief of his pain which from time to time were administered to him until his death; that he thereafter remained in bed almost continuously, being unable to feed, bathe, or shave himself; that his heart was greatly enlarged and frequently during his illness he was gasping for breath; his life was constantly in peril, and he never attempted, during his illness, to transact any business, except occasionally to sign a check that had been written out for him. That immediately after the death of the said James G. Davis, to-wit, during the month of December, 1940, proof of the total and permanent disability of the said James G. Davis, as herein before shown, was given to defendant. That without knowledge of the provision of the said policy that when the said James G. Davis should become wholly and permanently disabled before default in the payment of premiums and before he should reach the age of sixty, defendant would waive all subsequent premiums, plaintiff, on behalf of the said James G. Davis, did on June 16, 1940, pay to defendant the annual premium on said policy, amounting to the sum of One Hundred Seventy-six Dollars and Ten Cents, although on said date the said James G. Davis had become wholly and permanently disabled as herein before averred, and was not then in default in the payment of any premium on said policy."

By pleas the defendant denies "that James G. Davis was afflicted with a disease of such serious nature as to render it unreasonable from October 3, 1939, to December 2, 1940, that the said James G. Davis furnish to the defendant proof of his disability as required by the terms of the policy"; denies that the furnishing of such proof was excused by reason of the nature of the disease with which insured was afflicted or the severity thereof; denies "that during the period during which disability benefits are sought" the condition of the insured was continuously such as to render it either impossible or unreasonable for him to have furnished to the defendant proof of his claimed disability as required by the terms of the policy"; denies that at all times from October 3, 1939, to the time of his death, that the insured was physically unable to comply with the requirements of the policy with reference to furnishing of proof of disability as provided in the policy; denied that the life of the insured was continuously in peril subsequent to October 3, 1939, and denies that subsequent to said date the condition of the insured was such as to prevent him from complying with the disability provision of the contract sued on.

At the trial there was filed a stipulation of counsel "that the following facts are true and correct and this stipulation may be introduced in evidence in behalf of the defendant without objection as to its correctness of facts." In addition thereto considerable evidence was adduced by both sides. The court directed a verdict for the defendant and rendered judgment for the defendant. A writ of error was taken.

The principles of law applicable to the merits of cases of this general nature have been carefully stated

in opinions of this court. See Hallowes v. New York Life Ins. Co., 133 Fla. 872, 184 So. 7, 12, 14; Franklin Life Ins. Co. v. Tharpe, 130 Fla. 546, 178 So. 300; Reliance Life Ins. Co. v. Lynch, 144 Fla. 50, 197 So. 723.

"The rule established by the statute is that if no evidence is introduced upon which a jury may lawfully find a verdict for one party, a direction may be given to find for the opposite party, but the judge should never direct a verdict for one party, unless the evidence is such that no view which the jury may lawfully take of it favorable to the other party can be sustained."

"In all cases where there is room for difference of opinion between reasonable men as to the existence of facts from which an ultimate fact is sought to be established, or when there is room for such difference as to the inferences which might be drawn from conceded facts, the court should submit the case to the jury for their finding, as it is their conclusion, in such cases, that should prevail, and not the views of the judge."

"The duty devolving upon the court in reference to directing a verdict on the evidence may become, in many cases, one of delicacy, and should be cautiously exercised." Headnotes 2, 3, 4, Rogers Co. v. Meinhardt Bros. & Co., 37 Fla. 480, 19 So. 878. See also Herndon v. State, 73 Fla. 451, 74 So. 511; Branford State Bank v. Howell Co., 88 Fla. 493, 102 So. 649; Jones v. Gen. Accident, Fire & Life Ass. Corp., 103 Fla. 787, 137 So. 889; Wager v. East Coast Hosp. Assn., 105 Fla. 547, 141 So. 743.

The evidence in this case was of such a nature as to require a reversal of the judgment rendered for the

defendant on a directed verdict, in order that the cause may be submitted to a jury in due course.

Reversed and remanded.

BROWN, C. J., WHITFIELD, BUFORD, and ADAMS, JJ., concur.