83 So.2d 688 (1955)
CENTENNIAL INSURANCE COMPANY, a corporation, Appellant,
v.
W.E. PARNELL and Amy Parnell, Appellees.
Supreme Court of Florida, Special Division A.
October 19, 1955.
Rehearing Denied December 19, 1955.
*689 Harry T. Gray, Francis P. Conroy, Sam R. Marks and Marks, Gray, Yates & Conroy, Jacksonville, and Bigham, Englar, Jones & Houston, New York City, for appellant.
Elmer Norton and Carlton Welch, Jacksonville, for appellees.
ROBERTS, Justice.
The plaintiffs ("the Parnells" hereafter) sued the defendant insurance company ("Centennial" hereafter) in two counts on an alleged oral maritime contract (1) of insurance or (2) to insure certain fishing vessels owned by the Parnells, to recover for the loss of one of the vessels, the "Parnell". The jury found in favor of the Parnells, assessing their damages at $20,000, and awarding them $1,450 interest and an attorney's fee of $4,500. Since the court had charged the jury that an attorney's fee was recoverable only if there was a contract of insurance, the jury must have allowed recovery on that basis. Centennial's motions for new trial and for judgment under 30 F.S.A. Common Law Rules, rule 40 were denied, and it has appealed from the judgment against it.
The "Parnell" sank while in Campeche Bay in the Gulf of Mexico. Most of the controversy hinges on the fact that the written policy of insurance issued to the Parnells by Centennial provided Campeche coverage only for 30 days from the effective date of the policy, and the loss did not occur within that period. The Parnells claimed, however, that they had entered into an oral contract of insurance with Centennial, through its authorized agent Conklin, under which the "Parnell" had Campeche coverage for one year, and it was this alleged oral agreement upon which they sued. Centennial denied the agency of Conklin and denied that it had an oral contract of insurance with the Parnells. There were other defenses by Centennial which need not be related here.
The evidence showed that Conklin, an insurance agent, had placed the Parnells' marine insurance in the previous year. When it was about to expire, he again solicited their business and made inquiries among various marine insurance companies as to rates, since the company then carrying the risk did not wish to renew. He approached E. Dana Johnson & Company, an insurance broker, with respect to the matter. This company ("Johnson" hereafter) communicated by telephone with the New York office of Centennial and obtained a quotation of the rates which they would charge on this particular risk. Finally, on July 20, 1951, Centennial advised Johnson verbally, by telephone, that they were willing to bind the risk, and a written binder in the form of a telegram was dispatched by Centennial to Johnson late that afternoon. It is admitted by Centennial that this telegram bound them to insure the two vessels named therein, one of which was the "Parnell", for one year at the rates and for the period specified therein, including Campeche coverage for one year. It was shown, however, that the Campeche coverage was included at the request of Johnson on a contingent basis only, as Johnson was not sure that the Parnells wanted Campeche coverage for the full year, or at all.
In the meantime, earlier that day (July 20), Conklin had called upon the Parnells, explained the rates to them on the basis of the information supplied to him by Johnson, and they authorized him to place the insurance with Centennial. At this point, there is a direct conflict in the testimony *690 as to Campeche coverage. Conklin testified that the Parnells told him they wanted Campeche coverage only for 30 days, as they were planning to bring their boats back from that area immediately and not send them back until after bad weather. The Parnells testified that they wanted this coverage for the full year, and that Conklin assured them that they would be so covered.
After further correspondence between Johnson and Centennial, a written policy was issued on August 3, 1951, which contained to Campeche coverage whatsoever. Subsequently, however, on August 6, 1951, in response to a letter from Johnson, an endorsement was written and attached to the policy, granting Campeche coverage for 30 days from the effective date of the policy (July 21, 1951).
Mrs. Parnell testified that she received the policy, but did not read it; that she received a letter from Conklin, advising that he was enclosing the endorsement relating to Campeche coverage and read the letter but did not read the endorsement.
It is undisputed that the Parnells dealt only with Conklin and Centennial dealt only with Johnson. The written policy was sent to Johnson for delivery to the Parnells, and the premium was forwarded to Centennial by Johnson. Conklin arranged premium financing for the Parnells with a local bank.
The Parnells take the position that, both under the general law of agency and under the provisions of Section 625.01, Fla. Stat. 1953, F.S.A., Conklin was the agent of Centennial and made a binding oral agreement of insurance with them that could not be varied by the terms of a written policy which they never read and, therefore, never accepted. Centennial contends the evidence shows that neither Conklin nor Johnson had any authority to bind it to a risk; that it is the established custom and usage in marine insurance that the underwriter itself has the sole authority to bind a risk, unless written authority to do so has been given to its authorized agent; that Centennial has two agents in Florida, but that neither Conklin nor Johnson was authorized to act as an agent of Centennial; that marine underwriters deal with insurance brokers such as Johnson as the agent of the assured, and not as their own agent; that the provisions of Section 625.01 were not intended to and do not alter this established maritime law; and that, even if it be assumed, arguendo, that there was an oral agreement, it was merged into the written policy so that the Parnells' remedy is to obtain a reformation of the written policy.
The factual assertions made by Centennial, referred to above, are shown by the record to be true. Not only did Conklin have no actual authority to bind Centennial to the risk, he had none of the indicia of apparent authority to do so  no application forms, literature, letterheads, calling cards, or anything else. The Parnells did not sign an application form for the insurance, nor did they testify that Conklin held himself out to be an agent of Centennial, although they said he told them he could "put" or "place" the insurance with Centennial on a fleet policy basis. There was, then, no showing of an actual or apparent authority on the part of Conklin to enter into an oral contract of insurance on behalf of Centennial; and unless there is something in Section 625.01, Fla. Stat. 1953, F.S.A., which, under the circumstances here present, compels this conclusion, there is no legal justification for a judgment which holds Centennial liable on an alleged oral contract of insurance made by Conklin.
Section 625.01, as it presently reads, provides that "[In construing the provisions of these statutes and of laws hereafter enacted relating to insurance, * * * where the context permits, the word, phrase or term: (1) `Agent' or `insurance agent' shall include] any person: (a) Who solicits insurance and procures applications therefor, who shall be held to be the agent of the person issuing a policy upon such application, anything in the application or policy to the contrary notwithstanding; * * * *691 (c) Who solicits insurance, indemnity or surety contracts, or who, in any wise, directly or indirectly, makes or causes to be made any contract of insurance for or on account of any insurer, shall be deemed, to all intents and purposes, an agent or representative of such insurer, anything in the application or contract to the contrary notwithstanding; * * *." The bracketed portion of the statute indicates the language that was added to it in the 1941 revision of our statute laws, apparently by the revisers. Whether the portion of the statute set off by brackets has the effect of limiting the application of the provisions of subsections (a) and (c) thereof to questions of statutory construction only, need not be decided. This is so because, even prior to the 1941 change, the statute as it then existed, Section 6207, C.G.L. 1927, had been interpreted by this court contrary to the Parnells' contention. In Parsons v. Federal Realty Corporation, 1931, 105 Fla. 105, 143 So. 912, 916, 88 A.L.R. 275, where this court was considering a similar statute relating to surety companies, we said:
"The statute relating to the agents of surety companies, as well as the statute relating to the agents of insurance companies, does appear to declare an irrebuttable presumption of law, but such a presumption as to the fact or status of agency only, on the part of the person who acts under the statutory particulars. It does not undertake to conclusively fix the scope and extent of the authority of agents as between the company and third persons." (Emphasis added.)
In the Parsons case, this court cited with approval the decision of the United States Supreme Court in Mutual Life Ins. Co. of New York v. Hilton-Green, 241 U.S. 613, 36 S.Ct. 676, 60 L.Ed. 1202, in which that court had under consideration the statute with which we are here concerned, prior to the 1941 change. The United States Supreme Court said in that case that the statute "undertakes to designate as agents certain persons who in fact act for such companies in some particular, but it does not fix the scope of their authority as between the company and third persons, and certainly does not raise special agents, with limited authority, into general agents possessing unlimited power." (Emphasis added.)
It must be held, then, that neither under the general law of agency nor under the statute, Section 625.01, supra, can Centennial be bound by the oral agreement alleged to have been made with the Parnells by Conklin.
We have not overlooked the telegram to Johnson by which Centennial bound itself to supply Campeche coverage for one year. Assuming that Johnson and Conklin were the special agents of Centennial for the purpose of relaying to the Parnells this written commitment of Centennial to bind the risk, including Campeche coverage for one year, (although it is conceded that the Parnells did not know about the telegram until the trial, nor did Conklin, apparently) the fact remains that Conklin was, first and foremost, the agent of the Parnells and that, as such agent, he advised Johnson (who, in turn, directed Centennial) to include in the written policy Campeche coverage for only thirty days. If Conklin misunderstood the coverage desired by the Parnells, then the misunderstanding was between the Parnells, as principals, and Conklin, as their agent, a controversy in which Centennial would not be involved.
We have also considered the Parnells' contention that Centennial ratified the oral agreement, but are not persuaded that Centennial has been shown to have ratified an agreement about which it knew nothing, allegedly made by one who was not its actual agent and who had no apparent authority to act as its agent. Centennial may have been on notice, from correspondence between it and Johnson and the financing bank, that Johnson was dealing with the Parnells through Conklin; but all of this correspondence had reference to the written policy of insurance and gave no notice to Centennial that Conklin did anything more than act as the agent of the Parnells in accordance with the custom and usage in maritime insurance.
*692 The question of whether the Parnells could obtain relief in a court of equity in a suit for the reformation of the insurance policy is not properly before the court and is not decided.
Other questions have been presented but need not be considered, since the judgment must be reversed for the reasons stated.
Reversed.
DREW, C.J., and TERRELL and BARNS, JJ., concur.