A. J. PEDDY, Jr. and J. J. Griffin,
Appellants,

v.

PACIFIC EMPLOYERS INSURANCE COMPANY, Appellee.

No. 16222.

United States Court of Appeals
Fifth Circuit.

June 29, 1957.

William G. Carver, Lakeland, Fla., James S. Moody, Plant City, Fla., Car-

ver & Langston, Lakeland, Fla., for appellants.

T. Paine Kelly, Jr., MacFarlane, Ferguson, Allison & Kelly, Tampa, Fla., for appellee.

Before TUTTLE, JONES and BROWN, Circuit Judges.

JONES, Circuit Judge.

A. J. Peddy, Jr., is a resident of Lakeland, Florida. During all times here pertinent he was the active head of A. J. Peddy & Sons, Inc., a Florida corporation, and of Mulberry Lumber Co., a partnership doing business in Florida and composed of Margaret C. Peddy and Mazie Peddy MacKay, wife and sister of A. J. Peddy, Jr. The corporation operated a sawmill. The partnership was in the business of retail dealer in lumber and builders' supplies. A. J. Peddy III was sixteen years of age and the son of A. J. Peddy, Jr. He was a member of his father's household. Pacific Employers Insurance Company is a California Corporation. It issues policies of automobile liability insurance in the course of its business. Oliver Joe Bailey Company is a Florida corporation conducting an insurance agency in Orlando, Florida. It represents Pacific Employers with authority to bind risks and issue policies of insurance on its behalf. Howard H. Allsopp was in the insurance business in Lakeland, Florida. He was the appointed agent of several insurance companies. He was not an appointed agent for Pacific Employers and it had never heard of him until after the happening of the events out of which this litigation arose.

Allsopp solicited the insurance business of automobile liability coverage on the cars and trucks of A. J. Peddy & Sons, Inc., and Mulberry Lumber Company. At the time of the solicitation he had no company in mind but contemplated placing the business, if he procured it, with Bailey. Allsopp asked Bailey to quote a rate which Bailey did. Allsopp submitted the rate in competition with another who was actively seeking the business. Peddy agreed to take the proposal submitted by Allsopp, a schedule of the cars and trucks was prepared and sent to Bailey. Bailey wrote up the policy for Pacific Employers, countersigned it as the agent of Pacific Employers and sent it to Allsopp. The policy named the corporation, A. J. Peddy & Sons, Inc., and the partnership, Mulberry Lumber Company, as the insureds. It was an audit policy with automatic coverage, that is, cars and trucks acquired after the issuance of the policy by those named as insureds were automatically covered by the policy without indorsement and premiums were adjusted upon periodic audits made by the insurance company. Sixteen vehicles were described in the schedule annexed to the policy as being owned by the named insureds. The policy obligated Pacific Employers "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of" bodily injury to or death of persons, and property damage, within the policy limits, "caused by accident and arising out of the ownership, maintenance or use of any automobile." It is provided by the policy that "The insurance with respect to any person or organization other than the named insured does not apply: * * * with respect to any non-owned automobile, to any executive officer if such automobile is owned by him or a member of his household". The policy also contained this provision:

"Notice to any agent, or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the Company from asserting any rights under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsement issued to form a part of this Policy, signed by its President and Secretary and countersigned by a duly authorized representative or agent of the Company".

On May 15, 1951, the policy was taken by Mr. Allsopp from Lakeland to Mul-

berry, Florida, about twelve miles distant and there Allsopp discussed the policy and its coverage with A. J. Peddy, Jr. From Peddy at the time of this discussion, or from some other source, Allsopp learned that a 1950 Dodge car was owned by Mazie Peddy MacKay in her own right rather than by one of the insureds. At this conference there was mention made of a Willys Jeep. Allsopp testified that he recalled "quite vividly Mr. Peddy saying 'There should be a jeep. I have got a jeep', or 'we have got a jeep'". He couldn't remember whether Peddy said "I" or "We", but he recalled that he said to Peddy "Okay; you are covered." Allsopp went on to say that if he had been advised that the jeep was owned by A. J. Peddy, Jr. or any other individual the normal procedure would have been to include the owner as a named insured in the policy by indorsement. Peddy's testimony was "I told Mr. Allsopp I had purchased a jeep for my son". He quoted Allsopp as saying the jeep would be fully covered from then on. Allsopp then and on the same day wrote Oliver Joe Bailey Company making some corrections in the description of some of the cars listed in the policy schedule and reporting that one of the cars, Item 5, was owned by Mrs. MacKay and requesting that her name be added as an insured and an additional premium charged. The letter from Allsopp to Bailey continued:

"Item 17 should be added to include 1948 Willys Jeep Engine No. J 213491 and Serial No. CJ 2 A 206774.

"In view of the fact that this is a comprehensive form that the only change necessary is item 5 above as the other items do not affect premium except item 17 which could be picked up at audit. However issue endorsement on all items if you feel necessary".

The endorsement adding Mrs. MacKay as an insured was issued and an additional premium was paid with respect to her car.

The jeep, being driven by A. J. Peddy III was in a collision with a truck owned by J. J. Griffin. Griffin brought suit against A. J. Peddy, Jr. as the owner of the jeep. Pacific Employers denied liability and declined to defend. Griffin recovered judgment for $5,000.00 which Pacific Employers refused to pay. Pacific Employers brought suit for a declaratory decree against the named insureds, against A. J. Peddy, Jr., and against Griffin. The complaint sought a decree declaring that the jeep was not covered by the policy and that Pacific Employers had no liability for the damages incurred by Griffin as a result of of the collision. Peddy, by counterclaim, sought reformation of the policy, exoneration from the Griffin judgment and his costs and expense in defending the Griffin suit, and claimed $5,000 for damage to his reputation. Motions for summary judgment were denied and the cause was tried before the court without a jury. The district court held that Allsopp was not an agent with any real or apparent authority to bind the insurance company for insurance on the jeep or waive the policy provisions limiting or excluding coverage. Judgment was entered for Pacific Employers, and A. J. Peddy, Jr. and J. J. Griffin have appealed.

Allsopp was a broker. He did not have, at the time of the negotiations which led to the initiation of the policy by Pacific Employers any authority to represent it. He did not then know the name of the company which would issue the policy. Pacific Employers had not at that time ever heard of him. The general rule in such cases is that the broker is the agent of the insured and not of the insurer. 29 Am.Jur. 114, Insurance, § 91. Such rule would be applicable here unless the State of Florida, whose law governs, has by statute or otherwise departed from the general rule. It is here contended by the appellants that Florida has modified the general rule by the enactment of the following statutory provision:

"In construing the provisions of these statutes and of laws hereafter enacted relating to insurance, indemnity and sureties, where the con-

text permits, the word, phrase or term:

"(1) 'Agent' or 'insurance agent' shall include any person:

"(a) Who solicits insurance and procures applications therefor, who shall be held to be the agent of the person issuing a policy upon such application, anything in the application or policy to the contrary notwithstanding;

"(b) In this state, who receives or receipts for any money on account of or for any insurer, or who receives or receipts for money from other persons to be transmitted to any insurer for a policy or contract of insurance, or any renewal thereof, although such policy of insurance is not signed by him as agent or representative of such insurer;

"(c) Who solicits insurance, indemity or surety contracts, or who, in any wise, directly or indirectly makes or causes to be made any contract of insurance for or on account of any insurer, shall be deemed, to all intents and purposes, an agent or representative of such insurer, anything in the application or contract to the contrary notwithstanding; * * *" Fla.Stat.Ann. § 625.01.

The Supreme Court of the United States, in construing an earlier statute of Florida, held that such a statute:

"* * * undertakes to designate as agents certain persons who in fact act for an insurance company in some particular; but it does not fix the scope of their authority as between the company and third persons, and certainly does not raise special agents, with limited authority, into general ones, possessing unlimited power." Mutual Life Ins. Co. of New York v. Hilton-Green, 241 U.S. 613, 36 S.Ct. 676, 680, 60 L.Ed. 1202, reversing 5 Cir., 211 F. 31.

The doctrine of the Hilton-Green case was approved and followed by the Supreme Court of Florida in Parsons v. Federal Realty Corporation, 105 Fla. 105, 143 So. 912, 88 A.L.R. 275. And see Hallowes v. New York Life Ins. Co., 133 Fla. 872, 184 So. 7, 184 So. 12, 184 So. 14. The most recent of the Florida cases, and we think, the nearest to the instant case of any of the decided cases, is Centennial Insurance Co. v. Parnell, decided in 1955, by the Supreme Court of Florida, and reported at 83 So.2d 688. In this case the Parnells, owners of a fishing boat, applied to an insurance agent named Conklin for coverage. Conklin did not represent any company which would write the insurance desired. Conklin applied to Johnson, and he in turn, submitted the inquiry as to rates and coverage to Centennial Insurance Co. which advised Johnson they would bind the risk and a telegraphic binder insuring the boat for one year was sent to Johnson. Johnson reported to Conklin and he to Parnell who authorized Conklin to place the insurance. Centennial advised Johnson that they would cover the boat while fishing in Campeche Bay in the Gulf of Mexico. Conklin testified the Parnells told him they wanted Campeche coverage for only 30 days as they were bringing their boats out of that area. Parnell testified they told Conklin they wanted Campeche coverage for a year and that Conklin assured them they would be so covered. The policy as written had no Campeche coverage. Subsequently, in response to a request by Johnson, Campeche coverage for 30 days was provided by endorsement. Mrs. Parnell received the policy but did not read it. She received the endorsement but did not read it. Johnson had no contract with the Parnells. Conklin had no contract with the insurance company. The boat sank in Campeche Bay after the 30-day coverage provided by the endorsement had expired. The factual resemblance of the Parnell case to the case we have for decision is apparent. The Parnells took the position that Conklin was the agent of Centennial both under the general law of agency and under § 625.01. The Supreme Court of Florida reversed

a judgment for the Parnells against Centennial. The court quoted with approval from the opinion in Parsons v. Federal Realty Corporation, supra. From the opinion in the Parnell case we quote:

"In the Parsons case, this court cited with approval the decision of the United States Supreme Court in Mutual Life Ins. Co. of New York v. Hilton-Green, 241 U.S. 613, 36 S.Ct. 676, 60 L.Ed. 1202, in which that court had under consideration the statute with which we are here concerned prior to the 1941 change. The United States Supreme Court said in that case that the statute 'undertakes to designate as agents certain persons who in fact act for such companies in some particular, but it does not fix the scope of their authority as between the company and third persons, and *certainly does not raise special agents, with limited authority, into general agents possessing unlimited power.*' (Emphasis added.)

"It must be held, then, that neither under the general law of agency nor under the statute, Section 625.01, supra, can Centennial be bound by the oral agreement alleged to have been made with the Parnells by Conklin.

"We have not overlooked the telegram to Johnson by which Centennial bound itself to supply Campeche coverage for one year. Assuming that Johnson and Conklin were the special agents of Centennial for the purpose of relaying to the Parnells this written commitment of Centennial to bind the risk, including Campeche coverage for one year, (although it is conceded that the Parnells did not know about the telegram until the trial, nor did Conklin, apparently) the fact remains that Conklin was, first and foremost, the agent of the Parnells and that, as such agent, he advised Johnson (who, in turn, directed Centennial) to include in the written

policy Campeche coverage for only thirty days. If Conklin misunderstood the coverage desired by the Parnells, then the misunderstanding was between the Parnells, as principals, and Conklin, as their agent, a controversy in which Centennial would not be involved." Centennial Insurance Co. v. Parnell, 83 So.2d 688, 691.

■ Applying the doctrine there to the facts here, we hold that Allsopp had no such general agency for Pacific Employers as authorized him to waive the provisions of the Pacific Employers policy or to bind it to an oral contract insuring Peddy against negligence liability with respect to the jeep. The appellants would escape the impact of the Parnell case on the ground that it involved marine insurance. It may be noted though that neither the Parsons case nor the Hilton-Green case, relied upon and followed in Parnell, dealt with marine insurance.

At the time of the conversation between Allsopp and Peddy regarding the jeep, Peddy was not a party to the insurance contract nor insured under it. His liability with respect to the jeep was a hazard expressly excluded from the indemnity coverage of the policy. The jeep was not scheduled in the policy. The policy prohibited waivers except by written endorsement. We recognize that there is authority for the doctrine that the provision against waiver may itself be waived. Queen Insurance Co. v. Patterson Drug Co., 73 Fla. 665, 74 So. 807, L.R.A.1917D, 1091; Southern States Fire Insurance Co. v. Vann, 69 Fla. 549, 68 So. 647, L.R.A.1916B, 1189. But we are cited to no case, and our search discloses none, where an agent without express authority of any kind has waived into a policy an insured not named therein and extended its coverage to property not described therein.

But, as we have already shown, the facts here do not call for the application of any principle of waiver or estoppel. The commitment which the appellants contend was made for Peddy's benefit

by Allsopp on behalf of Pacific Employers, being for a new party with respect to a different subject matter would be an oral contract of insurance. We have no doubt but that an oral contract of insurance, at least a binder pending the issuance of a policy, can be made effective by a general agent of a company but such an obligation cannot be incurred for an insurer by one not authorized to represent it, especially by a person of whom it never heard.

We give our approval to the judgment of the district court. It is

Affirmed.