716 So.2d 774 (1998)
Jason K. ALMERICO, et al., Petitioners,
v.
RLI INSURANCE COMPANY, Respondent.
No. 89131.
Supreme Court of Florida.
September 4, 1998.
Lee D. Gunn, IV and Kelly K. Griffin of Gunn, Ogden & Sullivan, P.A., Tampa, for Petitioner.
George A. Vaka of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for Respondent.
ANSTEAD, Justice.
We have for review RLI Insurance Co. v. Collado, 678 So.2d 1313 (Fla. 2d DCA 1996), based on express and direct conflict with Gaskins v. General Insurance Co., 397 So.2d 729 (Fla. 1st DCA 1981). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. For the reasons expressed below, we hold that under section 626.342(2), Florida Statutes (1989), civil liability for an agent's conduct may be imposed upon insurers who cloak insurance agents with sufficient indicia of agency to establish an agency relationship. We quash the decision under review and approve Gaskins.

*775 MATERIAL FACTS[1] AND PROCEEDINGS BELOW
Eighteen-year-old Daron Collado was the driver of a car involved in an accident in which one passenger was killed and two others, including petitioner Jason K. Almerico (Almerico), were seriously injured. The car, a 1989 Honda, was owned by Daron Collado's parents, Donald and Grace Collado (the Collados). At issue is whether, at the time of the accident, the Collados were insured under an umbrella policy of personal liability insurance obtained by their insurance agent J.R. Pliego from RLI Insurance Company. The resolution of that issue rests in turn on a determination of the nature of the agency relationship between Pliego and RLI.
J.R. Pliego (Pliego), owner of J.R. Insurance Agency, was a licensed insurance agent lawfully authorized to sell insurance in Florida.[2] Pliego provided the Collados with liability insurance for a number of years. He represented American Mutual Fire Insurance Company (American) and insured the Collados with a liability policy and an umbrella policy issued by American. When American stopped issuing umbrella policies, Mrs. Collado requested that Pliego obtain umbrella insurance from another company.
Pliego obtained applications for insurance from Poe and Associates (Poe), who had been authorized to market RLI Insurance Company's policies in Florida. Although RLI knew that Poe would obtain subproducers to take applications for insurance, RLI relied on Poe to process the applications and had no direct dealings with the subproducers like Pliego. Nevertheless, there is evidence in the record that Pliego was actually assigned an RLI agent number and had a certain minimum of policies that he had to procure each year for RLI in order to remain within RLI's network of producing agents. In a letter to RLI, Poe identified Pliego and his agency, J.R. Insurance Agency, as "Agent # 2020" and as being recently added as "a new administrator in Florida to our Personal Umbrella Program." Thereafter, that agent number was affixed to the Collados' subsequent application to renew their umbrella policy next to the caption "RLI Agent Number." Under the caption "RLI Agent" was handwritten "J R Insurance." J.R. Pliego himself signed the application of the Collados for a policy from RLI next to the words "Producer's Signature." An RLI umbrella policy was issued to the Collados, and was subsequently renewed through the same process.
Following the automobile accident, RLI filed a declaratory judgment action against the Collados and their primary liability insurer, American. RLI asserted that it was entitled to rescind the umbrella policy since the Collado renewal application contained material misrepresentations, omissions, or incorrect statements. RLI alleged that the insurance application required the Collados to list all drivers in their household under age twenty-six and to list all vehicles that were owned or leased by household members, and the Collados had failed to do so. It was alleged that the application falsely stated there were no drivers in the household under age twenty-six and failed to list a Mazda RX-7 owned by the Collados. RLI alleged that pursuant to its underwriting guidelines, it would not have issued an umbrella policy to any household having either a youthful driver or a high performance car.
In response, the Collados filed an affirmative defense claiming that RLI was estopped from denying coverage because the application was prepared and signed by RLI's agent Pliego. It was further alleged that Pliego and RLI had actual knowledge of the false or missing information and actually possessed a copy of the underlying policy with American also containing all of the missing information including the exact number and type of all vehicles owned by the Collados and the fact that eighteen-year-old Daron was a household resident.
Almerico and his uninsured motorist provider, The Phoenix Insurance Company (Phoenix), were allowed to intervene in the action because of their settlement of claims *776 against the Collados. The settlement provided for a stipulated judgment whereby Almerico and his insurer became judgment creditors and express assignees of the Collados for their liability arising out of the accident. Almerico and Phoenix also asserted the same claim of estoppel as asserted by the Collados that RLI was estopped from relying on any omissions in the application because of RLI's actual knowledge, through its agent Pliego, of the relevant information.
A series of partial summary judgments were entered by the trial court concluding that: (1) the Collados' misrepresentations in the insurance application were material and RLI would not have issued the policy had it known the true facts; (2) Pliego was RLI's statutory agent pursuant to section 626.342, Florida Statutes, and RLI was estopped from rescinding the policy by reason of its actual knowledge, through its agent, of the alleged false or missing information; and (3) RLI breached its indemnity obligations by wrongfully denying coverage under the umbrella policy.
On appeal, the Second District found that Pliego was acting not as RLI's agent, but solely as the Collados' agent, and consequently, the trial court should have entered a summary judgment for RLI. RLI, 678 So.2d at 1315.[3] Further, the court held that RLI was authorized to furnish Pliego with insurance applications without creating an agency relationship with him or his agency pursuant to the exchange of business statute, section 626.752, Florida Statutes (1989). In addition, the court found that since Pliego and his insurance agency were properly licensed to sell the insurance in question, RLI did not violate the provisions of section 626.342(1), Florida Statutes (1989).

LAW AND ANALYSIS
To resolve the issues raised in this case, we must examine the legal standard underlying the theory of agency and the statutory interpretation of Florida's insurance statutes employed by the district courts in RLI and Gaskins and by the federal district court in Brown v. Inter-Ocean Insurance Co., 438 F.Supp. 951 (N.D.Ga.1977).

BROKERS
In essence, the Second District's decision here is predicated upon the conclusion that Pliego was a broker and an agent for the Collados rather than an agent for RLI. One legal treatise defines an "insurance broker" as:
[O]ne who acts as middleman between the insured and insurer, soliciting insurance from the public under no employment from any special company, and, upon securing an order, placing it with a company selected by the insured or with a company selected by himself or herself; whereas an "insurance agent" is one who represents an insurer under an employment by it. A broker is, in essence, employed in each instance as a special agent for a single purpose, while the very definition of agent indicates an ongoing and continuous relationship. Since many insureds deal with the same broker for long periods of time, it is, in most cases, the continuity of the agency relationship that differs from the broker relationship; brokers and insureds are ordinarily involved in what can be viewed as a series of discrete transactions, while agents and insurers tend to be under some duty to each other during the entire length of the relationship.
3 Lee R. Russ, Couch on Insurance 3d, § 45:1 (1997) (footnotes omitted). As a general principle, an insurance broker is an agent of the insured. See, e.g., Boulton Agency, Inc. v. Phoenix Worldwide Industries, Inc., 698 So.2d 1248 (Fla. 3d DCA 1997); Auto-Owners Ins. Co. v. Yates, 368 So.2d 634 (Fla. 2d DCA 1979).
However, it is equally well settled that the insurance broker may act in the dual capacity of broker for the insured and agent *777 of the insurer. American Fire Ins. Co. v. King Lumber & Mfg. Co., 74 Fla. 130, 151, 77 So. 168, 174 (1917); accord Steele v. Jackson Nat'l Life Ins. Co., 691 So.2d 525, 527 (Fla. 5th DCA 1997) (acknowledging that "an independent insurance agent can be the agent of the insurance company for one purpose and the agent of the insured for another"); see also Johnny C. Parker, Does Lack of an Insurable Interest Preclude an Insurance Agent From Taking an Absolute Assignment of His Client's Life Policy?, 31 U. Rich. L.Rev. 71, 98 (1997) (explaining "dual agency" principle as limited exception to general rule that insurance agent cannot serve two masters). Accordingly, a determination that a particular agent is an insurance broker may not conclude the issue of agency relationship. In fact, the petitioners contend here that there is an issue of statutory agency, as well as issues of actual or apparent authority based on the conduct of the insurer, RLI.
Florida case law provides that an insurer may be held accountable for the actions of those whom it cloaks with "apparent agency".[4] Further, a review of the case law on agency indicates that evidence of indicia of agency may be demonstrated if the insurer furnishes an insurance agent or agency with "any blank forms, applications, stationery, or other supplies to be used in soliciting, negotiating, or effecting contracts of insurance." § 626.342(1); see Fidelity & Casualty Co. v. D.N. Morrison Constr. Co., 116 Fla. 66, 156 So. 385 (1934). In Fidelity & Casualty Co., we found an agency relationship based on evidence the insurer gave "blank forms, blank applications, a seal of the corporation, and stationery with the corporate name" to the agent. Id. at 72, 156 So. 385. In that case the insurance company also allowed the agent to execute and deliver bonds and collect premiums and generally held him out as an agent without restrictions on his authority. Id.
Recent cases have applied a three-prong test under general agency law in order to determine the existence of apparent agency: first, whether there was a representation by the principal; second, whether a third party relied on that representation; and, finally, whether the third party changed position in reliance upon the representation and suffered detriment. See Warren v. Department of Admin., 554 So.2d 568 (Fla. 5th DCA 1989); Smith v. American Auto. Ins. Co., 498 So.2d 448 (Fla. 3d DCA 1986).[5]
In Warren, Blue Cross was the administrator of the state's insurance plan and the Department of Administration distributed brochures referring all claims to Blue Cross. 554 So.2d at 571. The Fifth District held that apparent authority was established based on these facts and the prior dealings between Warren and Blue Cross.
In Smith, the district court rejected both actual and apparent authority. 498 So.2d at 450. The court found no representations on the part of the insurance company and no written agreements concerning liability between appellant and the alleged agent, while noting that the appellant had not filled out an application form and was not even aware of the name of the insurance company. Id. at 449. In short, the district court found no representation upon which appellant could have relied.
Similarly, in Centennial Insurance Co. v. Parnell, 83 So.2d 688 (Fla.1955), we found no indicia of apparent authority present because *778 the insurance company never supplied "application forms, literature, letterheads, calling cards, or anything else" to the alleged agent. Id. at 690. We considered the fact that the applicants never signed the application form and that the "agent" never held himself out as an agent of the insurance company. Id. See also Murphy v. John Hancock Mut. Life. Ins. Co., 213 So.2d 275, 275 (Fla. 3d DCA 1968) (affirming summary judgment in favor of insurer where application had explicit provisions which, among other things, "expressly forbade an agent to waive any condition" thereof).

STATUTORY INTERPRETATION
Florida has an extensive statutory scheme set out in Chapter 626, Florida Statutes (1997), regulating both the state licensing of insurance agents and the appointment of insurance agents as designated agents by insurance companies. Section 626.342, Florida Statutes (1989) provides in pertinent part:
626.342 Furnishing supplies to unlicensed life, health, or general lines agent prohibited; civil liability and penalty.
(1) No insurer, general agent, or agent, directly or through any representative, shall furnish to any agent any blank forms, applications, stationery, or other supplies to be used in soliciting, negotiating, or effecting contracts of insurance on its behalf unless such [items] relate to a class of business with respect to which such agent is a licensed agent, whether for that insurer or another insurer.
(2) Any insurer, general agent, or agent who furnishes any of the supplies specified in subsection (1) to any agent or prospective agent not licensed to represent the insurer and who accepts from or writes any insurance business for such agent or agency shall be subject to civil liability to any insured of such insurer to the same extent and in the same manner as if such agent or prospective agent had been appointed, licensed or authorized by the insurer or such agent to act in its or his behalf.
(Emphasis supplied.) The district court concluded first, that section 626.342(1) was not violated by RLI, and second, that neither Pliego nor his insurance agency became RLI's statutory agent under section 626.342(2):
[W]e conclude that under general law, Mr. Pliego was the agent of the Collados. We additionally hold that section 626.342 does not change that result and, therefore, the appellant is not estopped from rescinding the insurance policy.
....
Since Mr. Pliego was acting as a broker, he was the agent of the Collados in matters connected with the procurement of the umbrella policy. Yates. See also Ivey [v. Hull & Co., 458 So.2d 439 (Fla. 2d DCA 1984)]; AMI Ins. Agency v. Elie, 394 So.2d 1061 (Fla. 3d DCA 1981). Therefore, the conflict in testimony concerning the application was irrelevant because the Collados were bound by his actions.
We recognize that the general rule discussed above can be modified by statute. See Peddy v. Pacific Employers Ins. Co., 246 F.2d 306 (5th Cir.1957). Under the facts of this case, however, the trial court erred by holding that Mr. Pliego was the statutory agent of the appellant pursuant to section 626.342, Florida Statutes (1989), and that the appellant was, therefore, estopped from rescinding the policy.
Section 626.342 is entitled "Furnishing supplies to unlicensed life, health, or general lines agent prohibited; civil liability and penalty." ...
As the title to the section indicates, the purpose of the statute is to prohibit the furnishing of certain indicia of agency to those who should not have it. In this case, Mr. Pliego and J.R. Insurance Agency were properly licensed to sell the insurance in question and the appellant was authorized to furnish Mr. Pliego the applications involved pursuant to section 626.752, Florida Statutes (1989), which provides for the exchange of business between insurers and agents. Since the appellant and Mr. Pliego complied with section 626.752, section 626.342(1) was not violated and Mr. Pliego and/or J.R. Insurance Agency did not become the appellant's statutory agent under 626.342(2). [Note 1]
*779 [Note 1]. Even if we had determined that this section applied, the scope and authority of the statutory agent as it relates to third persons is not so conclusively fixed by the statute itself as to fasten irrebuttable liability on the company for any agreement the agent may sign or any act he may perform. Centennial Ins. Co. v. Parnell, 83 So.2d 688 (Fla.1955). To hold otherwise would just about do away with insurance brokers.
RLI, 678 So.2d at 1315-17. As evidenced in the discussion above, the Second District focused on the statute's title[6] and the general insurance licensing requirements found in subsection (1) of the statute, with almost no analysis addressing the provisions regarding agents not specifically licensed by the concerned insurance company found in subsection (2), other than to conclude its provisions did not apply. In this regard we believe the analysis is incomplete.[7]
The petitioners do not claim that subsection (1) of section 626.342 was violated or that Pliego was not "properly licensed" by the State to sell liability insurance. It is also undisputed that Pliego was not formally appointed as an agent for RLI under Florida's statutory and administrative scheme for licensing and appointment. Nor is there any assertion that RLI was furnishing Pliego with insurance applications, blank forms, etc., pursuant to the exchange of business statute, section 626.752, Florida Statutes (1989).[8]
Rather, at issue is the meaning and application of subsection (2) of 626.342 and the Second District's conclusion that, ipso facto, "Mr. Pliego and/or J.R. Insurance Agency did not become [RLI's] statutory agent under 626.342(2)." 678 So.2d at 1316-17. The petitioner contends that subsection (2) applies here to make Pliego RLI's statutory agent since RLI provided its materials to an agent "not licensed to represent the insurer" and the statute creates "civil liability to any insured ... to the same extent and in the same manner as if such agent ... had been appointed ... to act in its ... behalf." § 626.342(2). We must determine the meaning and effect of that language.

GASKINS
The predecessor of section 626.342 construed in Gaskins was then designated as section 626.746, Florida Statutes (1977). The relevant and operative provisions of section 626.342 and its predecessor, section 626.746, are very similar. In Gaskins, the First District reversed a summary judgment that had been entered in favor of an automobile insurer. To determine whether the agent was an insurance broker or an agent of the insurance company, the Gaskins court followed the analysis in Brown v. Inter-Ocean Insurance Co., 438 F.Supp. 951 (N.D.Ga.1977), interpreting the same statute. Gaskins, 397 So.2d at 732. In doing so the court reasoned:

*780 We further agree with appellants that an issue is presented concerning whether the insurance agency was acting as agent for appellee in this transaction. Section 626.746(1), Florida Statutes (1977), provides in part that no insurer shall furnish any agent any blank forms, applications, stationery or other supplies for use in soliciting, negotiating or effecting contracts of insurance on its behalf unless the agent is duly licensed by the State of Florida and further, under subsection (3):
Any insurer, general agent, or agent that furnishes to any agent or prospective agent not named or appointed by the insurer represented or supplied with any of the supplies mentioned in subsection (1) and accepts from, or writes any insurance business for, such agent or agency shall be subject to civil liability to any insured of such insurer to the same extent and in the same manner as if such agent or prospective agent had been appointed, licensed or authorized by the insurer or such agent to act in its behalf by the Department of Insurance....

A literal interpretation of the above quoted portion of the statute has been made in Brown v. Inter-Ocean Insurance Company, 438 F.Supp. 951 (N.D.Ga.1977), the only case we have found construing the statute. While we note that the Brown court reached a decision adverse to the insured, it did so based upon a determination that a provision in the application that "no agent shall have the right to make, alter, modify, or discharge any contract or policy issued on the basis of this Application..." (438 F.Supp. at 954), placed the applicant on notice of limitations upon the actual authority of the agent. Appellee has pointed to no such language in the application in question here. Appellee refers to a provision in the application stating: "This binder must be called in on General Insurance Company of Florida's binder phone prior to the effective date of the binder indicated above...." This provision, however, has no bearing upon the extent of the agency's authority to explain the application form, obtain information and complete the application form in behalf of the company. This provision would also have no bearing upon imputation to appellee of the employee's knowledge concerning the status of drivers in applicant's household, which was correctly related to the employee, according to Mrs. Gaskins. Facts within knowledge of an authorized representative of the insurer while acting within the proper scope of his authority is knowledge of the insurance company. Johnson v. Life Insurance Company of Georgia, 52 So.2d 813 (Fla.1951); Poole v. Travelers Insurance Co., 130 Fla. 806, 179 So. 138 (1938); and Russell v. Eckert, 195 So.2d 617, 620 (Fla. 2d DCA 1967).
Id. at 731-32 (emphasis supplied). The Gaskins court reversed and agreed with the appellants that "an issue is presented concerning whether the insurance agency was acting as agent for appellee [General Insurance Company of Florida] in this transaction." Id. at 731.

BROWN
In Brown, the federal court, applying Florida law, also concluded that then section 626.746 could be invoked to impose liability upon a supplying insurer accepting business from an agent. Brown completed an application for life and accidental death insurance coverage in Gainesville, Florida, on May 20, 1975, and paid a premium and received a receipt from the insurance agent indicating that the policy was immediately effective. On May 29, 1975, Brown was killed in a plane crash in Tennessee. The insurance company refused payment on the policy, asserting that its underwriting procedures had not been completed so that the policy had not yet been properly issued. The beneficiaries asserted that the company was bound by the representations of effectiveness made by the agent. Brown, 438 F.Supp. at 952-3.
Applying section 626.746(3), the Brown court found the insurance company bound by the agent's actions because the company had supplied application forms and accepted business from him:
Plaintiff alternatively contends in her motion for summary judgment that even if a policy were not issued to Jennings Brown, Inter-Ocean is bound by the representations *781 of Duston Wolters and Sam Holloway to him that he was covered by the policy.
Under Florida law Wolters and Holloway were agents of Inter-Ocean, in that Inter-Ocean supplied them with application forms and accepted insurance business from them. Fla.Stat.Ann. § 626.746(3); Russell v. Eckert, 195 So.2d 617 (Fla.App. 1967). The acts of Wolters and Holloway as statutory agents are binding on Inter-Ocean unless Jennings Brown knew of the limitations on their actual authority or unless the circumstances of the transaction put him on notice to inquire as to their actual authority. Appleman, Insurance Law and Practice, Vol. 16, § 8676, quoted in Hughes v. Pierce, 141 So.2d 280, 282 (Fla.App.1961); Fidelity and Casualty Co. of New York v. D.N. Morrison Construction Co., 116 Fla. 66, 156 So. 385 (1934). Although determination of an agent's apparent authority may in some cases be a question of fact, Hughes v. Pierce, supra, an agent cannot bind an insurer by contracting to issue a policy when the written application expressly states that the agent cannot so contract. Murphy v. John Hancock Mutual Life Insurance Co., 213 So.2d 275 (Fla.App.1968). The application signed by Jennings Brown expressly provides that "no agent shall have the right to make, alter, modify, or discharge any contract or policy issued on the basis of this Application ..." Jennings Brown was thereby put on notice to inquire as to the actual authority of Wolters and Holloway, and Inter-Ocean is not bound by their representations. It is consequently unnecessary to determine whether Wolters or Holloway actually represented to Brown that he was covered by insurance effective on the date of application.
438 F.Supp. at 954. As can be seen, the court held that but for the express limitation of authority, the insurance company would have been bound under section 626.746(3) by the agent's representation.[9]
Considered together, Brown and Gaskins indicate that under section 626.342(2), and its predecessor, 626.746(3), the furnishing of company materials by the insurance company to the individual agent or broker and the subsequent acceptance of business from that agent establish civil liability by an insurer to an insured in the same manner as if the insurer had specifically designated the broker as its agent. Further, these cases hold that the principal (insurer) will be bound by the agent's action unless the insured knew or was put on notice of inquiry as to limitations on the agent's actual authority. Brown.
Although we concede that the purpose of the statute is not entirely clear, we conclude that the interpretations of the statute reached in Gaskins and Brown are correct. We find the language of section 626.342(2) to be unambiguous insofar as it makes the insurer liable to the insured in the same way that it would be liable had it expressly appointed the broker as its agent.[10] RLI has offered no reasonable alternative interpretation.[11]
Rather, RLI, in essence, suggests that subsection (2) not be read literally, but be *782 read only as to impose civil liability when subsection (1) is violated. However, even if we were to agree that the precise purpose of section 626.342(2) may be uncertain, we cannot so easily ignore the legislature's express language in subsection (2). We would have to ignore a plain reading of subsection (2) to hold that it only provides for civil liability upon a finding of a violation of subsection (1). That is simply not what it says. If the provisions of subsection (2) are to be changed, it is for the legislature to do so.
Section 626.342(2) appears to be an insurance consumer law designed to protect insurance consumers when dealing with insurance companies through brokers and agents. It clearly informs insurance companies that while they may receive business from unaffiliated agents by providing them with certain insurance business materials that identify the agent with the company, if a company thereafter accepts business from the agent, it will be held responsible to the insured just as if it had lawfully and formally appointed the agent as its own. Hence, as to that particular insurance transaction, unless the insured is specifically put on notice to the contrary as in Brown, the insurance company is bound under section 626.342(2) by the actions of its statutory agent.[12]

THIS CASE
Under the circumstances presented here, there appears to be a complex, interwoven relationship between RLI, Poe, Pliego, and the Collados which precludes a finding that, as a matter of law, Pliego was at all times acting as the agent of the Collados and not as RLI's agent in his transactions with the Collados.[13] Indeed, there is evidence that Pliego may have been acting in the dual roles of RLI's insurance agent and the Collados' insurance broker. Further, if a fact-finder reached that conclusion, then the actual knowledge that Pliego possessed about the Collados' insurance matters while wearing his hat as an RLI insurance agent and dealing with them in that capacity may be imputed to RLI as his principal. See Johnson v. Life Ins. Co. of Georgia, 52 So.2d 813, 815 (Fla.1951).
In addition, RLI points to no specific evidence from which a notice of inquiry should have arisen and signaled to the Collados any limitations on Pliego's actual authority to act on RLI's behalf and procure insurance for them based on his knowledge of their affairs. Brown v. Inter-Ocean Ins. Co. Certainly, there is no evidence cited that the Collados were ever informed that Pliego was acting solely as their agent and not as the agent of RLI. If anything, the several RLI applications completed by the Collados may have bolstered the appearance of Pliego's apparent authority to act for RLI. For example, on the face of the Collados' 1988 original application to RLI is the instruction: "Make premium *783 check payable to RLI INSURANCE COMPANY." Further, the application itself was titled: "RLI INSURANCE COMPANY PERSONAL UMBRELLA APPLICATION." RLI's company name is similarly prominent on the Collados' 1989 renewal application, as was the caption on the top page displaying Pliego's "RLI Agent Number 2020" and "J R Insurance" as the "RLI Agent."[14]

CONCLUSION
In summary, we hold that under the provisions of section 626.342(2), Florida Statutes (1989), as well as Florida's common law, civil liability may be imposed upon insurers who cloak unaffiliated insurance agents with sufficient indicia of agency to induce a reasonable person to conclude that there is an actual agency relationship.[15] We are unable to determine conclusively, however, the state of the record and evidence as it pertains to the issues of whether the actions of the insurance company here bring it within the operation of section 626.342(2) and whether Pliego, while acting in the capacity of an agent for RLI, was in receipt of such information as would create an estoppel. For those reasons we remand to the district court for determination of whether issues of fact remain to be adjudicated.
Accordingly, we quash the decision under review, approve Gaskins, and remand this case to the Second District for further proceedings consistent herewith.
It is so ordered.
HARDING, C.J., and OVERTON, SHAW, KOGAN and WELLS, JJ., concur.
NOTES
[1] The following facts are primarily taken from the district court's opinion. RLI, 678 So.2d at 1314-15.
[2] Our references to Pliego in this opinion will include his insurance agency.
[3] In reaching that conclusion, RLI, 678 So.2d at 1316, the Second District relied on its earlier decision in Auto-Owners Insurance Co. v. Yates, 368 So.2d 634 (Fla. 2d DCA 1979), wherein it defined an "insurance broker" as "one who acts as middleman between the insured and the insurer, and who solicits insurance from the public under no employment from any special company." Id. at 636 (quoting 3 Ronald A. Anderson, Couch Cyclopedia of Insurance Law § 25:93 (2d ed.1959)).
[4] In Hughes v. Pierce, 141 So.2d 280 (Fla. 1st DCA 1961), the First District held that the insurance agent could properly be found to be an agent of the insurer due to the fact the company held him out to the public as an agent by printing and delivering business cards designating him as such. Id. at 283. Likewise, in Russell v. Eckert, 195 So.2d 617, 620 (Fla. 2d DCA 1967), the Second District held that an agency relationship existed due to the fact the insurer furnished its agent with the insurance company's "letterheads, brochures, binder forms, stationery, application forms, etc." However, Russell is somewhat unique because a standard agency contract existed between the agent and the insurance company. Id. Therefore, while the district court in Russell found apparent authority present for the particular act in question, it did so in the context of an agent appointed to represent the insurer generally.
[5] See also Mobil Oil Corp. v. Bransford, 648 So.2d 119, 121 (Fla.1995); Steele v. Jackson Nat'l Life Ins. Co., 691 So.2d 525, 528 (Fla. 5th DCA 1997); Robbins v. Hess, 659 So.2d 424 (Fla. 1st DCA 1995).
[6] The petitioners point out that a violation of section 626.342(1) may also result in an administrative penalty, including the suspension of an insurer's license to do business in Florida. However, the penalty provision no longer appears in section 626.342, as the title would seemingly indicate, but rather appears in Rule 4-231.110(5) of the Florida Administrative Code.
[7] When a court interprets a statute, "[i]t is axiomatic that all parts of a statute must be read together in order to achieve a consistent whole." Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992). Further, whenever possible, "courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another." Id. at 455; see also State v. Riley, 638 So.2d 507, 508 (Fla.1994) (reading subsections of same statute in pari materia). Therefore, it is imperative that courts "avoid readings that would render part of a statute meaningless." Unruh v. State, 669 So.2d 242, 245 (Fla.1996) (quoting Forsythe, 604 So.2d at 456).
[8] For example, section 626.752(3)(a) provides:

An insurer may furnish to resident Florida general lines agents who are not licensed by such insurer its forms, coverage documents, binders, applications, and other incidental supplies only for the purposes set forth in this section and only to the extent necessary to facilitate the writing of exchange of business pursuant to this section. The insurer shall assign a unique brokering agent's register number to each agent not licensed with the insurer but furnished with the insurer's forms, coverage documents, binders, applications, and other incidental supplies.
This statutory scheme places numerous responsibilities upon an insurer seeking to utilize its provisions. The statute also has a savings clause protecting the rights of insureds under section 626.342. See Gonzalez v. Great Oaks Cas. Ins. Co., 574 So.2d 1182 (Fla. 3d DCA 1991). The respondent acknowledges in its answer brief that the exchange of business statute is not implicated here.
[9] In this case, the application contains no express limitation on the authority of Pliego. In fact, RLI admits that it required no such limitation either in the application or as conveyed by the agent himself.
[10] In addition to the predecessor statutes discussed in Brown and Gaskins, we have considered some of the other versions of the relevant statutes. For example, in 1971 the legislature amended section 626.0119, Florida Statutes (1969), by adding subsection (3) to provide as follows:

626.0119 Furnishing supplies to unlicensed agent prohibited; civil liability and penalty.
....
(3) Any insurer, general agent or agent that furnishes to any agent or prospective agent not named or appointed by the insurer represented or supplied with any of the supplies mentioned in (1) above and accepts from or writes any insurance business for such agent or agency shall be subject to civil liability to any insured of such insurer to the same extent and in the same manner as if such agent or prospective agent had been appointed, licensed or authorized by the insurer or such agent to act in it or his behalf by the department of insurance.
See Ch. 71-58, § 1, Laws of Fla.; § 626.746, Fla. Stat. (1971) (emphasis supplied). This provision also appears to create civil liability for the insurance company and responsibility for the broker's actions and knowledge under the circumstances presented here.
[11] We cannot agree with RLI that the later substitution of the word "unless" in section 626.342(1) for the word "until" in section 626.746(1) dramatically alters the meaning of subsection (1) and subsection (2) of 626.342.
[12] When we consider the agency case law we have previously discussed together with the statutory law, we find there to be a common thread. In the early cases, for example, insurance companies were often found to be liable under agency principles when it could be demonstrated that they had furnished agents with extensive materials thereby cloaking the agent with the indicia of agency. See Queen Insurance Co. v. Patterson Drug Company, 73 Fla. 665, 74 So. 807 (1917). The insurance statutes contained similar provisions, in essence indicating that an insurance company could not provide an agent with the appearance or cloak of agency without also being responsible to an insured for the agent's actions on behalf of the company. If that is not what the legislature has intended here, it is within its discretion to change the language of the statute.
[13] The factual backdrop and professional relationships among the insurance company and its sales/marketing network in Brown v. Dealers Insurance Co., 534 So.2d 908 (Fla. 1st DCA 1988), resembles that of the case before us and illustrates the sometimes amorphous nature of an insurance broker. There, the First District reversed a summary judgment in favor of the insurance company (Dealers Insurance) and the managing agency (FMGA), and against the insured (Brown), concluding:

The record reveals material facts in dispute concerning whether Kirkpatrick Insurance Agency was acting as the agent of appellant, Daniel P. Brown, or of appellees. FMGA was a designated agency for Dealers Insurance Company, and FMGA had a contractual relationship with Kirkpatrick Insurance Agency for the placing of insurance. It cannot be said as a matter of law that Kirkpatrick Insurance Agency was at all times acting as the agent for appellant [the insured] and was not acting within the real or apparent scope of authority from FMGA.
Id. at 909.
[14] Cf. T & R Store Fixtures, Inc. v. Travelers Ins. Co., 621 So.2d 1388, 1389 (Fla. 3d DCA 1993) (finding that "mere acceptance by the insurer of prior premium payments transmitted by the broker on its checks" did not have legal effect of signaling insured that its insurance broker had actual or apparent authority to collect premiums as an agent of the insurer).
[15] In reaching this conclusion, we are also mindful of the general rule that forfeitures of insurance policies are disfavored in Florida. Johnson, 52 So.2d at 815; accord Boca Raton Community Hosp. v. Brucker, 695 So.2d 911, 912 (Fla. 4th DCA 1997); LeMaster v. USAA Life Ins. Co., 922 F.Supp. 581, 585 (M.D.Fla.1996).